UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                    Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Gabby Garcia | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 28)**

Before the Court is a Motion to Dismiss filed by Defendants Cedars-Sinai Medical Center, Cedars-Sinai Board of Directors' Pension Investment Committee ("PIC"), Cedars-Sinai Defined Contribution Retirement Plans' Committee ("RPC"), and Andy Ortiz.  (Mot., Doc. 28.)  Plaintiff Jason Zimmerman opposed, and Defendants responded.  (Opp., Doc. 33; Reply, Doc. 34.)  The Court took this matter under submission and, for the following reasons, DENIES Defendants' Motion.

**I.     BACKGROUND**

Jason Zimmerman initiated this putative class action on June 13, 2023, alleging that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*  (*See* Compl., Doc. 1.)  Zimmerman is a current participant in the Cedars-Sinai Health System 403(b) Retirement Plan (the "Plan"), a tax-deferred, defined contribution retirement plan.  In his First Amended Complaint ("FAC"), Zimmerman brings this action against the Plan's fiduciaries—Cedars-Sinai Medical Center, PIC, RPC, and Ortiz—on behalf of the Plan's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                    Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

participants and beneficiaries.  (FAC ¶¶ 8, 15, 18, 21, 24.)   As of December 31, 2021, the Plan had 16,140 participants and over $2.15 billion in assets.  (*Id.* ¶ 4.)

Zimmerman alleges that Defendants breached their fiduciary duty of prudence and their duty to monitor the Plan.  (*Id.* ¶¶ 197, 206.)  As to the duty of prudence, Zimmerman sets forth four Plan management choices that he alleges breached that duty, which the Court refers to as his theories of imprudence.  Those theories of imprudence are: 1) Defendants allowed the Plan to pay unreasonable fees to its service providers; 2) Defendants invested in expensive share classes; 3) Defendants retained poorly performing funds; and 4) Defendants retained a higher cost, higher risk stable value fund.  (*Id.* ¶¶ 6, 180–81.)  He alleges that these imprudent decisions also demonstrate that Defendants failed properly to monitor the Plan.  (*Id.* ¶ 206.)

*Excessive Fees.*  The FAC alleges that the Plan "should have negotiated" lower fees for recordkeeping and administrative services, "or better yet negotiated a per-person flat fee."  (*Id.* ¶ 52.)  The FAC points out that fees paid to service providers between 2017 and 2021 "more than doubled" even though the number of Plan participants increased by only 18 percent; for example, the FAC alleges that the Plan paid $1.7 million in fees in 2021 for "the same services" as were provided in 2020 for only $1.35 million.  (*Id.* ¶¶ 55, 57.)  The FAC compares the Plan's median fees of $106 per participant to other plans with comparable numbers of participants and comparable amounts of plan assets that had median per participant fees ranging from $26 to $70.  (*Id.* ¶ 59.)  Using this comparison, the FAC alleges that a reasonable fee, based on the median of the comparator plans, would be $42 per participant.  (*Id.*)  The FAC adds that service providers "vigorously compete for business by offering the best service for the best price" and that large plans, like the one here, have leverage to negotiate better fees.  (*Id.* ¶¶ 61, 69.)  Finally, the FAC alleges that these services "are largely standardized" and "do not vary from plan to plan."  (*Id.* ¶¶ 65, 66.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                          Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

*Expensive Share Classes.*  The FAC next alleges that the Plan's funds that invest in "expensive share classes" were "imprudently selected and retained."  (*Id.* ¶ 92.)  That is because "investing in expensive share classes causes return lags … and offers the Plan no pecuniary benefit."  (*Id.*)  Further, less expensive share classes are readily available.  (*Id.*)  The FAC alleges that investment in expensive share classes causes "the Plan to pay excess fees and directly erod[es] the Plan's gains."  (*Id.* ¶ 94.)  The FAC acknowledges that revenue sharing arrangements, which the Plan implemented, sometimes offset these higher fees but that "empirically speaking, revenue sharing burdens on mutual fund investors are *always* more costly than the revenue sharing credit offered" and that the return lag "always outweighs any revenue sharing credit or rebate."  (*Id.* ¶¶ 101, 102.)  The FAC identifies six funds in which the Plan invested in an expensive shares class despite the availability of a cheaper option and demonstrates the return difference as to each fund caused by the greater expense.  (*Id.* ¶ 100.)

*Retention of Underperforming Funds.*  The FAC also alleges that "Defendants maintained funds that underperformed their relevant benchmarks."  (*Id.* ¶ 136.)  The FAC offers the Morningstar Category Index as one source for such benchmarks and identifies three funds that failed to meet those performance indicators.  (*Id.* ¶¶ 131–32.)  The FAC alleges that: the Allspring Discovery SMID Cap Growth fund "demonstrates feast or famine returns," suggesting it is a "high-risk strategy" that harms Plan participants and could have been replaced by other outperforming funds (*Id.* ¶¶ 139–41); the AB Discovery Value fund "had [five] quarters of consecutive underperformance" and was "substantially outperformed" by other comparable funds (*Id.* ¶¶ 145–46); and the AB Global Bond fund "trailed its prospectus benchmark" for four out of the last five years, had "16 consecutive quarters of underperformance, and could have been replaced by other outperforming funds.  (*Id.* ¶¶ 150–52.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                                   Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

*VOYA Stable Value Fund.*  Finally, the FAC alleges that the VOYA stable value fund was imprudently selected and retained because it paid a much lower crediting rate than other available stable funds at only 1.91 percent.  (*Id.* ¶¶ 163–64.)  This lower crediting rate, the FAC alleges, was caused by the fund's higher fees.  (*Id.* ¶ 165.)  The FAC calculates that the stable value fund caused losses "in excess of $50 million of participants' retirement savings."  (*Id.* ¶ 167.)  The FAC alleges that Defendants failed to submit requests for proposal to other stable value fund providers to find a better product and compares the returns of the VOYA stable value fund against the returns of three other funds with higher crediting rates.  (*Id.* ¶¶ 172–73.)  The FAC adds that the funds in the VOYA stable value fund were not "adequately diversified" and that products like this stable value fund are becoming unattractive to large 403(b) plans "due to concerns about single entity credit and liquidity risk."  (*Id.* ¶¶ 175, 178.)  The FAC cites a "low-cost lower risk synthetic stable value fund structure" as the prudent choice.  (*Id.* ¶ 180.)

Based on these factual allegations of high costs and fund underperformance, the FAC alleges that "Defendants failed to act prudently and in the best interest of the Plan and its participants" by failing to make investment decisions "based solely on the merits of each investment"; failing to investigate lower-cost share classes; and failing to control "excessive compensation for recordkeeping and administrative services."  (*Id.* ¶¶ 197, 198.)  The FAC adds that these alleged instances of imprudence also evidence a failure to monitor Plan performance, fund investments, and excessive costs.  (*Id.* ¶ 206.)

Defendants moved to dismiss Zimmerman's initial Complaint, but Zimmerman amended the pleading once as a matter of course, as permitted by Federal Rule of Civil Procedure 15(a)(1).  (*See* First Motion to Dismiss, Doc. 20.)  That first motion attached five exhibits, including the Plan document and records of the Plan's revenue sharing agreements.  (*See* Exs. A–E to Schwebs Decl., Doc. 20-2.)  Using some of the information in those documents, the FAC added Defendants RPC and Andy Ortiz.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                         Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

Several of the new factual allegations in the FAC are also derived from those documents. (*See*, *e.g.*, FAC ¶ 16.)  Defendants ask that the Court consider those documents as incorporated by reference into the FAC and have now moved to dismiss the action in its entirety on the basis that Zimmerman lacks standing to pursue his claims and that the FAC fails to state a claim to relief.

## II.     LEGAL STANDARD

### A.     Extrinsic Evidence

"Generally, a court may not consider material beyond the complaint in ruling on a [Rule 12] motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  Courts may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Under the "incorporation by reference" doctrine, courts may take judicial notice of a document where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The Ninth Circuit has expressly warned against "exploiting" incorporation-by-reference "improperly to defeat what would otherwise constitute adequately stated claims at the pleadings stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  And while a court "may assume an incorporated document's contents are true …, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003 (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                    Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

### B.     Standing

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'  For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted).  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.*  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.  *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (internal quotation omitted).  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### C.     12(b)(6) Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                    Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

### III.   ANALYSIS

To decide this matter, the Court addresses: first, which documents were incorporated by reference into the FAC; second, whether Zimmerman has Article III standing; third, whether all named Defendants are fiduciaries, as required for actions brought under ERISA; and fourth, whether the FAC states a claim.

#### A.   Incorporation by Reference

Before ruling on Defendants' Motion to Dismiss, the Court must determine which documents were incorporated by reference into the FAC and can be relied on properly in the arguments regarding dismissal.  Defendants attached five exhibits to their Motion to Dismiss Zimmerman's original complaint: the Cedars-Sinai Health System 403(b) Retirement Plan Document, Zimmerman's quarterly account statements from 2019–2022, a 2018 Notice to Plan Participants about the Plan's revenue-sharing arrangement beginning in 2019, the Plan's Sponsor expenses as of July 31, 2023, and the Mercer Report.  (*See* First Motion to Dismiss; Exhibits A–E to Schwebs Decl..)  Defendants argue that those documents "are now expressly referenced and quoted in Zimmerman's FAC." (Mot. at 7.)  Defendants point to five paragraphs from the FAC—paragraphs 16, 17, 45, 52, and 98—that "referenc[e] allegations from the documents." (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                           Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

The Court agrees that the Plan Document and the 2018 Notice are incorporated by reference; the FAC quotes from those documents and references the 2019 adoption of a revenue-sharing arrangement.  (*See* FAC ¶¶ 16, 17, 51, 52, & 98.)  The Court also accepts that Zimmerman's claims regarding the Plan's underperformance must be based on his own account's performance; that is, he must show that his own investments in the Plan were harmed by the alleged imprudence.  Therefore, the quarterly statements are also incorporated by reference.  But the Court does not agree that the Plan's Sponsor expenses or the Mercer Report are incorporated by reference into the FAC.  The FAC alleges that it obtained the bulk of its factual allegations regarding the Plan from the Plan's Form 5500 disclosures, including the calculations for the administrative fee burdens and the returns on the VOYA stable fund.  (*See* FAC ¶¶ 29, 44, 58, 173.)  No party has placed those disclosures into evidence for the Court.  The FAC also alleges that some information about the performance of certain funds was derived from Morningstar, Inc. and the Morningstar Category Index.  (*Id.* ¶¶ 127–32.)  Though some of the data pulled from the Form 5500 disclosures and Morningstar may also appear in the Mercer Report and the Sponsor Expenses, that is insufficient to amount to incorporation-by-reference of those documents.  The five paragraphs that Defendants point to do not clearly reference those documents, and Defendants have not explained how those documents otherwise form the basis of Zimmerman's claims.

Therefore, the Court considers the Plan document, the 2018 Notice, and Zimmerman's quarterly statements as incorporated by reference into the FAC.  The Mercer Report and the Sponsor Expenses are, however, not incorporated into the FAC, and the Court does not consider them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                          Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

### B. Zimmerman's Allegations of Injury

Defendants argue that Zimmerman lacks Article III standing as to three of his theories of imprudence: continued investment in expensive share classes, maintenance of underperforming funds, and excessive record keeping fees.  (Mot. at 7–10.)  Defendants argue that Zimmerman cannot establish that he was injured by any of this alleged misconduct.

Regarding the investment in expensive share classes, Defendants present evidence that the expensive share classes offered revenue sharing, which offset the higher expenses associated with certain shares.  (*Id.* at 8.)  Specifically, with respect to the challenged high expense share classes in which Zimmerman invested, the Class I shares of the AB Discovery Value Institutional Fund were less expensive after revenue credit was applied than the Class Z shares that Zimmerman identifies as cheaper and therefore more prudent.  (*Id.*)  The Mercer Report, which Defendants argue was incorporated by reference in the FAC, shows that the adjusted net expense ratio of the Class I shares after accounting for that revenue sharing was .71 percent compared with .79 percent for the Class Z shares.  (*Id.* at 9.)  As a result, Defendants argue Zimmerman was not damaged by the investment in higher expense share classes.  (*Id.*)

But the Court determined that the Mercer Report was not incorporated by reference into the FAC and so Defendants' reliance on the data in the Mercer Report is misplaced.  Even if the Court considered the Mercer Report, that report cannot be used to dispute well-pleaded facts.  *See Khoja*, 899 F.3d at 1003.  Here, the FAC features well-pleaded factual allegations that Zimmerman and the other Plan participants were harmed by the expensive share classes notwithstanding revenue sharing because "revenue sharing burdens … are *always* more costly than the revenue sharing credits" and because expensive share classes "cause[] a return lag—a drag on investment performance based

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                                 Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

on the fees being drawn out of the investment rather than continuing to accrue gain," which "outweighs any revenue sharing credit or rebate."  (FAC ¶¶ 101, 102 (emphasis in original).)  The Court finds these to be sufficient allegations of harm, even in the face of Defendants' evidence of revenue sharing.

Defendants argue that revenue sharing also "offsets the time lag profits," rendering the "lag-time argument [] a red herring."  (Reply at 2.)  This dispute about the nature of Zimmerman's alleged injury does not strike the Court as one that can be resolved at the motion-to-dismiss stage.  Defendants point to *Matney v. Barrick Gold of North America*, in which the Tenth Circuit found that documentary evidence of a revenue sharing arrangement that "unquestionably yielded a lower cost share class fund for participants" contradicted the plaintiff's allegations of imprudence and necessitated dismissal of the complaint.  80 F.4th 1136, 1152, 1158 (10th Cir. 2023).  But in *Matney*, the Tenth Circuit did not contemplate allegations of an injury caused by return lag.  *See id.* at 1152.  As a result, this Court will take a more cautious approach, with guidance from the Ninth Circuit.  Even though Defendants have a "plausible" explanation for why the more expensive share classes were not harmful, and Defendants may be able to substantiate that explanation at the summary judgment stage, that is "not sufficient at the pleading stage to render [Zimmerman's] facially plausible allegations inadequate." *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022); *see also Kong v. Trader Joe's Co.*, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022) (same).

As to the maintenance of underperforming funds, Defendants argue that the underperformance was minor, that the underperforming funds were being closely monitored, and that the FAC fails to allege that the Plan's monitoring benchmarks were insufficient. (Mot. at 9–10.)  These arguments do not address Zimmerman's injury-in-fact and do not go to standing.  Defendants do *not* claim that Zimmerman's allegations in the complaint are insufficient to show that fund underperformance injured him, nor do

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                          Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

they identify errors in Zimmerman's calculations of alleged loss based on underperformance.  Instead, Defendants' arguments map more appropriately onto an argument under Rule 12(b)(6)—that Zimmerman failed to state a claim—which the Court addresses below.  Because Zimmerman sufficiently has alleged that the underperforming funds harmed him, he has standing to pursue this theory of imprudence.

Finally, regarding the excessive recordkeeping fees, Defendants argue that Zimmerman cannot establish an injury-in-fact because he paid less than the "reasonable" fee identified in the FAC. (Mot. at 10.)  Specifically, Defendants construe the FAC to allege that reasonable fees would have resulted in "a per capita fee of $42," while Zimmerman's account statements reveal that he paid about $35 in recordkeeping fees, meaning he was paying a "reasonable" fee and could not have been harmed.  (*Id.*)  But this argument misreads the allegations in the FAC.  The FAC alleges that the median per-participant fee for the Plan far outstripped the median fees in comparable plans and that a reasonable median fee, based on that comparison, would be $42 per participant.  (FAC ¶ 59.)  If the Plan's median fee dropped from $106 to $42, that would necessarily mean that Zimmerman's pro rata share of the Plan's fees would also be proportionally reduced. (Opp. at 7.)  This sufficiently alleges that Zimmerman paid more in recordkeeping fees than was reasonable and was harmed by the Plan's excessive fees.

For all three theories of imprudence, Zimmerman's allegations are sufficient to establish an injury and to confer Article III standing.

### C. Defendants and Their Fiduciary Status

Defendants next argue that the Court should dismiss several of the named Defendants because they "are not fiduciaries with discretionary authority over [the Plan's] investments." (Mot. at 11.)  Actions brought under ERISA "may be brought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP   Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

'against the plan as an entity *and against the fiduciary of the plan*.'"  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (emphasis in original) (quoting *Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1194 (8th Cir.1998)).  ERISA recognizes two types of fiduciaries: 1) the "named fiduciary" who is "designated 'in the plan instrument'"; and 2) a "functional" fiduciary who exercises "discretionary authority … respecting management of [the] plan … [or] its assets," "renders investment advice for a fee or other compensation," or "has any discretionary authority or discretionary responsibility in the administration of such plan."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653–54 (9th Cir. 2019) (quoting 29 U.S.C. §§ 1102(a)(2), 1002(21)(A)).   For allegations against a particular defendant to survive, a plaintiff must allege facts permitting the inference that the defendant meets the standard for one of these types of fiduciaries.

　　　Defendants argue that Cedars-Sinai Medical Center is the Plan sponsor and not a fiduciary. (Mot. at 12.)  According to Defendants, the sponsor has only "the power to amend and terminate the Plan, which is a settlor, not a fiduciary function."  (*Id.*)  It is true that control over the "composition or design of the plan itself," including the power to amend, does not amount to fiduciary duties.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).  But the FAC alleges that Cedars-Sinai Medical Center is a named fiduciary because "in 2021, the Plan was amended to provide that "[t]he Employer … shall be *named fiduciaries* within the meaning of ERISA."  (FAC ¶ 17 (emphasis in original).)  Therefore, there is no need to look at Cedars-Sinai Medical Center's functional duties because, as the employer, it is alleged to be a named fiduciary, which is sufficient at the pleading stage.

　　　Defendants next argue that Andy Ortiz, the Plan Administrator, does not have sufficient control of the Plan to be considered a fiduciary, and the FAC needs "more detailed factual allegations regarding [Ortiz's] authority" to establish fiduciary status.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                             Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

(Mot. at 13.)  But "formally designated plan administrators" are precisely the kind of defendant contemplated in actions brought under ERISA.  *Spinedex Physical Therapy*, 770 F.3d at 1297.  And as above, the FAC alleges that, under the Plan's provisions, the Plan Administrator is a named fiduciary.  (FAC ¶ 17.)  As an alleged named fiduciary, Ortiz is a proper defendant in this action.

Finally, Defendants argue that PIC must be dismissed from the action because the FAC does not feature any specific allegations of misconduct during the period of time that the PIC controlled the Plan.  (Mot. at 13.)  As a result, PIC is not implicated in any of the alleged breaches of fiduciary duty.  (*Id.* at 14.)  But the FAC states that the relevant time period for the allegations is "from six years prior to the filing of the initial complaint in this matter through the date of judgment."  (FAC ¶ 186.)  Zimmerman alleges that his theories of imprudence apply throughout that time period, including from 2017 to July 7, 2021, when PIC controlled the Plan.  (*See id.* ¶ 20.)  Indeed, throughout the FAC, Zimmerman dates the allegations of mismanagement back to 2017, demonstrating that lower recordkeeping fees were available in 2017, that less expensive share classes were available in 2017, and that alternatives to the VOYA stable fund were available and prudent as early as 2017.  (*Id.* ¶¶ 57, 59, 92, 173.)  These allegations are sufficient to attribute Zimmerman's theories of imprudence to PIC and its fiduciary role prior to 2021.

Because all Defendants are named fiduciaries and several allegations of imprudence are attributable to PIC before it was replaced by RPC, the Motion to Dismiss Defendants on this ground is denied.

### D. The Sufficiency of Zimmerman's Claims

Finally, Defendants argue that Zimmerman's two claims—a claim for breach of the fiduciary duty of prudence and a claim for breach of the duty to monitor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:23-cv-01124-JLS-SP                                                Date: February 18, 2024
Title: Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

investments—are inadequately pleaded. (Mot. at 16–24.) The Court addresses each claim in turn.

       **1.**        **Breach of Fiduciary Duty**

ERISA requires plan fiduciaries to act "solely in the interest of [plan] participants … for the exclusive purpose of (i) providing benefits to participants … and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). ERISA also requires plan fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Zimmerman alleges that Defendants breached their fiduciary duty of prudence under ERISA in four ways: 1) causing the Plan to pay excessive recordkeeping fees; 2) investing in expensive share classes when lower-cost shares were available; 3) maintaining consistently underperforming investment options; and 4) maintaining investment in the VOYA Stable Value Fund. For the reasons below, Zimmerman has stated a claim for breach of fiduciary duty as to each theory of imprudence.

First, "the duty of prudence requires a plan fiduciary to 'incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 627 (7th Cir. 2023) (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)). This theory requires Zimmerman to plead facts sufficient to permit the inference that Defendants allowed the plan to pay unreasonable fees and failed to take action that would reduce those fees. *See id.* Here, the FAC alleges that the Plan's fees for service providers increased at an alarming rate between 2017 and 2021, even as the number of participants remained about the same and the services provided remained the same. (FAC ¶¶ 55, 57.) The FAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                          Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

further alleges that the Plan's median fee per participant of $106 far outstripped the median fees per participant, ranging from $26 to $70, offered by analogous plans with similar numbers of participants and similar amounts of plan assets, including another plan offered by Cedars-Sinai itself that had median fees of $41 per participant.  (*Id.* ¶¶ 59, 60.)  The FAC also alleges that "recordkeeping services are largely standardized" rather than "bespoke" and that the core services do not vary much from plan to plan.  (*Id.* ¶¶ 61–67.)  The high fees for the Plan were caused, according to the FAC, by imprudent investment options and a failure to negotiate lower fees for the Plan participants.  (*Id.* ¶¶ 70, 75, 76.)

Defendants argue that these allegations fail to state a claim because Zimmerman "***does not*** allege what ***specific services*** [service providers] offered to the Plan, what services were offered by the comparators, or whether the comparators offered the same services to the other 403(b) plans for less."  (Mot. at 22 (emphasis in original).)  Essentially, Defendants argue that the FAC does not permit the inference that the Plan's fees were unreasonable because the Court cannot be sure that the analogous plans offering lower fees offered the same services.  "Though some courts at this stage have opted to analyze whether plaintiffs have offered a proper 'apples to apples' comparison for complaints of excessive fees, it is not required in the Ninth Circuit."  *In re Sutter Health ERISA Litigation*, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (internal citation omitted).  This Court agrees that "[i]t is sufficient at this stage that Plaintiffs allege specific facts supporting their claims that the Plan's fees and [costs] were excessive for its size."  *Id.*   Per that standard, Zimmerman has stated a claim for breach of fiduciary duty based on excessive fees.

Second, the duty of prudence requires the trustee to "exercise prudence in selecting investments at the outset" and "systematically consider all the investments of the trust at regular intervals to ensure that they are appropriate."  *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (cleaned up).  "If the fiduciaries fail to remove an imprudent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                                 Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 176 (2022).  Zimmerman sets forth three theories of how Defendants maintained imprudent investments, which Defendants try separately to attack, finding flaw in various allegations as they relate to the selection of share classes, the maintenance of underperforming funds, and the maintenance of the VOYA Stable Value Fund.  But the Court will not silo its own analysis in this way.  While Zimmerman points to three separate examples of imprudent investing, the Court can view all the allegations together, along with the claims regarding excessive fees, to determine whether Zimmerman has stated a claim for breach of fiduciary duty.  *See*, *e.g.*, *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017) ("The Defendants argue that, when viewed in isolation, each of [plaintiff's] allegations do not plausibly suggest a flawed decision-making process. However, 'the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009))).

Read as a whole, the FAC alleges that "Defendants chose and continued to maintain … higher cost share classes rather than readily available lower cost options." (FAC ¶ 91.)  The FAC adds that these expensive share classes cause "return lags," "offer[] no pecuniary benefit," and contribute to the Plan's problem with excessive fees. (*Id.* ¶¶ 92, 94.)  The FAC further alleges that the Plan's revenue-sharing arrangement, adopted in 2019, did not ameliorate the burdens of the expensive share classes, in part because of return lag and in part because the rebate formula does not necessarily "equitably return funds to participants."  (*Id.* ¶¶ 102, 109.)

Next, the FAC alleges that Defendants "imprudently maintained the Plan's investment" in three funds—the Allspring Discovery SMID Cap Growth fund, the AB Discovery Value fund, and the AB Global Bond fund—"despite … poor performance and high fees." (*Id.* ¶¶ 137, 143, 148.)  The FAC points to volatility in the Allspring

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                              Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

Discovery SMID Cap Growth fund and several consecutive quarters of underperformance in the other two funds as evidence of this imprudence.  (*Id.* ¶¶ 141, 146, 152.)

Finally, the FAC critiques the Plan's choice to invest in the VOYA Stable Value Fund.  The FAC alleges that the Stable Value Fund had a low crediting rate caused by the fund's "higher spread fees."  (*Id.* ¶¶ 163–65.)  The lower crediting rate allegedly resulted in a loss "in excess of $50 million of participants' retirement savings."  (*Id.* ¶ 167.)  According to the FAC, there were other stable value funds available, and the Plan could have leveraged its bargaining power for a better product.  (*Id.* ¶¶ 171–74.)  The FAC describes the "fail[ure] to cull the VOYA [Stable Value Fund] product or negotiate better terms for that product" as "symptomatic of [Defendants'] overall failure to put in place appropriate monitoring processes or failure to properly act in the best interests of the plan."  (*Id.* ¶ 182.)  Taken together, the Court finds that the allegations regarding the maintenance of these share classes and investment funds are sufficient to permit the inference that Defendants acted imprudently in maintaining these investments and in permitting these investments to exacerbate the problem of excessive fees.

Defendants' arguments otherwise are unavailing.  First, Defendants make the same argument about revenue sharing as they made above—that after revenue sharing leveled the fees, the share classes were not any more expensive than the comparator share classes identified by Zimmerman. (Mot. at 17.)  But Defendants rely on the Mercer Report for this argument, which was not incorporated by reference into the FAC.  Additionally, this argument does not effectively refute Zimmerman's allegations that the Plan's per participant fees remained unreasonably high when compared with the per participant fees in other comparable plans, permitting the inference that revenue sharing did not provide a sufficient offset.  (*See* FAC ¶ 59.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                                        Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

  Second, Defendants argue that the FAC lacks factual allegations regarding the Plan's processes for monitoring investments and fails to allege that the Plan's benchmarks or processes are improper.  (Mot. at 18.)  But "[t]o state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times."  *Terraza*, 241 F. Supp. 3d at 1070.  Because the fiduciary rather than the plaintiff is likely to have the necessary information about monitoring processes, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage."  *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  Therefore, the question is whether, even without direct allegations, "the court [is] able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed."  *Terraza*, 241 F. Supp. 3d at 1070.  Here, the inference that there was a flawed process is reasonable based on the allegations that the processes in place allowed for excessive fees and the retention of underperforming funds.

  Third, Defendants argue that the allegations about the VOYA Stable Value Fund are inadequate because the Mercer Report shows that the fund performed well.  (Mot. at 19.)  Defendants also assert that Zimmerman failed to identify viable comparator funds because the other products mentioned in the FAC are either unavailable to the Plan or different in kind.  (*Id.* at 20.)  Again, the Court does not consider the contents of the Mercer Report.  Furthermore, as Zimmerman points out, "Defendants ask the Court to conclude that the three comparators are not apt based on the say so of counsel and without evidence, which in any event would be improper to consider on this motion to dismiss."  (Opp. at 19.)  Indeed, Defendants' arguments seem better suited to the summary judgment stage.  At the pleading stage, where the Court must accept Zimmerman's well-pleaded factual allegations as true, Zimmerman has pleaded adequately that the VOYA Stable Value Fund was imprudently maintained because it contributed to the Plan's excessive fees and had a low crediting rate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:23-cv-01124-JLS-SP                                           Date: February 18, 2024
Title:  Jason Zimmerman v. Cedars-Sinai Medical Center, et al.

Accordingly, the Court DENIES Defendants' Motion as to the four theories of imprudence supporting his first claim for breach of fiduciary duty.

### 2. Breach of Duty to Monitor

Regarding Zimmerman's claim for breach of the duty to monitor, the parties agree that this claim "is essentially derivative of the breach of fiduciary duty claim." (Mot. at 24 (quoting *Dorman v. Charles Schwab Corp.*, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018)); *see also* Opp. at 20.)  Because Zimmerman stated a claim for breach of the fiduciary duty of prudence, he has also plausibly alleged a claim for breach of the duty to monitor.  The Court DENIES the Motion as to this claim as well.

### IV. CONCLUSION

For the above reasons, the Court DENIES Defendants' Motion to Dismiss.

Initials of Deputy Clerk: gga