UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ZIMMERMAN, ASIA FOWLER, and LILLIAN MENA, individually and as representatives of a Putative Class of Participants and Beneficiaries, on behalf of all similarly situated participants and beneficiaries on behalf of the CEDARS-SINAI HEALTH SYSTEM 403(B) RETIREMENT PLAN, | CASE NO. 5:23-cv-01124-JLS-SP <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOC. 91)** |
| Plaintiffs, | |
| v. | |
| CEDARS-SINAI MEDICAL CENTER; THE CEDARS-SINAI BOARD OF DIRECTORS' PENSION INVESTMENT COMMITTEE, THE CEDARS-SINAI DEFINED CONTRIBUTION RETIREMENT PLANS' COMMITTEE, ANDY ORTIZ, DEBRA LEE, ERIC HOLOMAN, JOSHUA LOBEL, LESLIE VERMUT, RICHARD SINAIKO, STEVEN ROMICK, MARK | |

RAPAPORT, JAMES NATHAN, DAVID
WRIGLEY, JEFF SMITH, DAVID
MARSHALL, PASY WANG, BRYAN
CROFT and DOES 1 through 10,

                Defendants.

Before the Court is a Motion for Class Certification filed by Plaintiffs.  (Mot., Doc. 91; Mem., 91-1.)  Defendants opposed, and Plaintiffs responded.  (Opp., Doc. 93; Reply, Doc. 94.)  Defendants then sought leave to file a sur-reply, which Plaintiffs opposed. (Docs. 95, 97.)  Having reviewed the motion to file the sur-reply, the opposition, and the proposed sur-reply, the Court GRANTS the request and ORDERS Defendants to file the sur-reply forthwith as a separate document on the docket.

Having held a hearing on December 6, 2024, and having considered the parties' briefs and oral arguments, the Court now DENIES Plaintiffs' Motion for the reasons stated below.

## I.  BACKGROUND

Named Plaintiffs Asia Fowler and Lillian Mena ("Plaintiffs")[1] are current and former participants in the Cedars-Sinai Health System 403(B) Retirement Plan (the "Plan"), a tax-deferred, defined contribution retirement plan.  (Fowler Decl. ¶ 2, Doc. 91-10; Mena Decl. ¶ 2, Doc 91-11.)  They bring a putative class action against Defendants Cedars-Sinai Medical Center, The Cedars-Sinai Board Of Directors' Pension Investment Committee, The Cedars-Sinai Defined Contribution Retirement Plans' Committee (the "Retirement Plans' Committee"), Andy Ortiz, Debra Lee, Eric Holoman, Joshua Lobel, Leslie Vermut, Richard Sinaiko, Steven Romick, Mark Rapaport, James Nathan, David Wrigley, Jeff Smith, David Marshall, Pasy Wang, and Bryan Croft (collectively "Defendants"), alleging that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. (Second Amended Complaint ("SAC") ¶¶ 5–6, Doc. 45.)

Plaintiffs asserts three claims against Defendants: breach of fiduciary duty of prudence; breach of fiduciary duty to monitor the Plan investments and covered service providers; and breach of the duty of loyalty.  (*Id.* ¶¶ 204–223.)  To support those three

---

[1] Named Plaintiff Jason Zimmerman formally withdrew as class representative shortly before the scheduled filing of Plaintiffs' Motion for Class Certification due to his relocation to the East Coast.  (Docs. 90, 92.)

claims, Plaintiffs divide their factual allegations into four separate categories, which the Court referenced in its Order denying Defendants' motion to dismiss (MTD Order, Doc. 38), as Plaintiffs' "theories of imprudence." The first is that Defendants caused the Plan to pay excessive recordkeeping fees. (SAC ¶¶ 50–84.) The second is that Defendants invested in expensive share classes when identical lower-cost share classes were available. (*Id.* ¶¶ 85–125.) The third is that Defendants selected and retained certain allegedly underperforming funds.[2] (*Id.* ¶¶ 126–157.) The fourth is that Defendants retained a higher cost, higher risk stable value fund—the Voya Stable Value Option (the "Stable Value Fund")—when other investment vendors offered superior alternatives. (*Id.* ¶¶ 158–195.)

Plaintiffs now move to certify the following class and sub-class for all of their claims:

> **Class**: All participants in or beneficiaries of the CEDARS-SINAI 403(B) PLAN from June 13, 2017, through the date of judgment (the "Class Period" or "Relevant Time Period"), excluding Defendants and members of the Defendant Boards and Committees.

> **Sub-Class**: All class members who currently participate in the Plan.[3]

(Mem. at 11.) Plaintiffs specify that the proposed sub-class is "for injunctive relief consistent with the prayer in the SAC." (*Id.* at 11 n.4; *see also* SAC at 56.) Plaintiffs are

---

[2] Plaintiffs specifically challenge the selection and retention of three underperforming funds: Allspring Discovery SMID Cap Growth (SAC ¶¶ 141–146); AB Discovery Value (*Id.* ¶¶ 147–151); and AB Global Bond. (*Id.* ¶¶ 152–157.)

[3] Plaintiffs' proposed class definition is narrower than that provided in the SAC, as it excludes Defendants and members of the Defendant boards or committees. Further, it adds a sub-class for injunctive relief, whereas the SAC sought injunctive relief on behalf of the entire class. (*See* SAC at 56.) "Given that courts frequently allow plaintiffs to seek certification of narrowed classes without amending their complaint and given that district courts are tasked with ensuring class definitions are properly tailored" the Court holds that "it would not make sense to prohibit . . . plaintiff[s] from narrowing their class definition[.]" *Gold v. Lumber Liquidators Inc.*, 2017 WL 2688077, at *4 (N.D. Cal. June 22, 2017).

4

members of the class and Named Plaintiff Fowler asserts she is a member of the proposed

sub-class; Plaintiffs invested in only the Stable Value Fund. (Mem. at 9, 12.)

In their motion, Plaintiffs also seek to have Fowler and Mena appointed Class

Representatives, and to have Christina Humphrey Law, P.C. and Bradley/Grombacher,

LLP appointed as Class Counsel. (Mot. at 2.) Defendants oppose class certification,

arguing that Plaintiffs lack Article III standing because they have not suffered an injury-in-

fact arising out of (1) the Plan's asset-based recordkeeping fees (2) Defendants'

investment in expensive share classes; (3) Defendants' selection and retention of three

underperforming revenue sharing funds; and (4) their investment in the Stable Value Fund.

(Opp. at 14–22.) Defendants also contend that Plaintiffs lack standing to seek prospective

relief on behalf of the proposed sub-class because Mena has cashed out of the Plan and

Fowler "indicated in her deposition that she intends to withdraw her account balance from

the Plan soon, whenever she has the time to focus on the Plan." (*Id.* at 22.) Moreover,

Defendants note in their sur-reply that Fowler's post-deposition decision to maintain a

$3,500 balance in the Plan is insufficient to confer standing because, as permitted by law,

the Retirement Plans' Committee recently voted to increase the involuntary cash-out

threshold in the Plan from $1,000 to $7,000 for all terminated Plan participants. (*See* Sur-

reply.) Defendants further oppose class certification on the grounds that Plaintiffs cannot

satisfy the adequacy requirement nor "the requirements of typicality or commonality to the

extent they are intertwined with Adequacy." (Opp. at 23.)

## II. LEGAL STANDARD

### A. Standing

"In a class action, the plaintiff class bears the burden of showing that Article III

standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "[I]f

none of the named plaintiffs purporting to represent a class establishes the requisite of a

case or controversy with the defendants, none may seek relief on behalf of himself or any

other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Article III sets

5

forth the constitutional limitations on standing, requiring a plaintiff to establish (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 185 (2000). A plaintiff establishes injury in fact when he has suffered an invasion of a legally protected interest that is "concrete and particularized," meaning the injury must "actually exist" and "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

### B. Rule 23

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a)[.]" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)); *see also* Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Here, Plaintiffs seek certification of the class under Rule 23(b)(1), which permits maintenance of a class action if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)    adjudications with respect to individual class members
> that, as a practical matter, would be dispositive of the
> interests of the other members not parties to the individual
> adjudications or would substantially impair or impede their
> ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Rule 23 does not set forth a mere pleading standard. A
party seeking class certification must affirmatively demonstrate his compliance with the
Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous
parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a
district court to conduct a "rigorous analysis" that frequently "will entail some overlap
with the merits of the plaintiff's underlying claim." *Id*. at 350–51.

### III.    ANALYSIS

#### A. Standing

Defendants argue that Plaintiffs lack standing as to all four of their theories of
imprudence: excessive recordkeeping fees, investment in expensive share classes, selection
and retention of certain allegedly underperforming funds, and retention of the Stable Value
Fund. (Opp. at 14–23.) Defendants assert that Fowler and Mena cannot establish that they
were injured by any of this alleged conduct. (*Id.*)

"ERISA plan beneficiaries may bring suits on behalf of the plan in a representative
capacity . . . so long as plaintiffs otherwise meet the requirements for Article III standing."
*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1127
(9th Cir. 2006). When assessing Article III standing in class action lawsuits, the Ninth
Circuit has adopted the so-called "class certification approach." *Melendres v. Arpaio*, 784
F.3d 1254, 1262 (9th Cir. 2015). Under that approach, "any issues regarding the
relationship between the class representative and the passive class members—such as
dissimilarity in injuries suffered—are relevant only to class certification, not to standing."
*Id.* (internal citation and quotation omitted). The class certification approach has
subsequently been applied by several district courts in the Ninth Circuit to deny challenges
to a plaintiff's standing to bring ERISA claims on behalf of absent class members

7

concerning investments in which a named plaintiff did not personally invest. *See, e.g.*, *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017); *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *4 (W.D. Wash. Mar. 22, 2018); *Cevasco on behalf of Allegiant 401(k) Ret. Plan v. Allegiant Travel Co.*, 2023 WL 6464867, at *3 (D. Nev. Oct. 4, 2023); *Coppel v. SeaWorld Parks & Ent., Inc.*, 2024 WL 3086702, at *6 (S.D. Cal. Jan. 31, 2024) (motion to dismiss); *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 351 (S.D. Cal. 2024) (class certification); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *7 (S.D. Cal. June 24, 2020); *Sabana v. CoreLogic, Inc.*, 2024 WL 755723, at *3 (C.D. Cal. Jan. 26, 2024) (appeal pending); *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *7 (N.D. Cal. Sept. 13, 2021); *In re Sutter Health ERISA Litig.*, 2023 WL 1868865, at *7 (E.D. Cal. Feb. 9, 2023).

In short, under *Melendres*, if a named Plaintiff has *any* claim for damages, then they have Article III standing to proceed, and the issue of dissimilarity in the type of injury is addressed under Rule 23(a). Because, as discussed below, Plaintiffs have standing based on their investments in the Stable Value Fund, the Court concludes that Plaintiffs have standing to assert their claims for damages and equitable relief for breach of the fiduciary duties of prudence, monitoring, and loyalty. On the other hand, Plaintiffs lack standing to assert a claim for injunctive relief.

### 1. Damages and Equitable Relief

Because it is dispositive as to Article III standing, the Court first addresses Defendants' challenge to Plaintiffs' standing to pursue their claims for relief related to the Stable Value Fund. Defendants argue that because "the [Stable Value Fund] performed exactly as promised," "neither Mena nor Fowler has shown a concrete injury as a result of their investment." (Opp. at 20, 22.) As an initial matter, Defendants' argument misreads the allegations in the SAC. Plaintiffs do not allege that they were injured because the Stable Value Fund did not perform as promised. Rather, the SAC states that "Defendants had an obligation to monitor the fees and performance of the VOYA [Stable Value Fund]

and to remove or replace it where a substantially identical investment option c[ould] be obtained from the same provider at a lower cost" and that Defendant's breach "resulted in a loss (before compounding) in excess of $50 million of participants' retirement savings." (SAC ¶¶ 166, 171.)  The SAC also includes tables from June 2017 to December 2022 showing "losses incurred by the Plan's failure to obtain a better crediting rate from VOYA, maintain the 3% crediting rate floor, or submit bids and switch to a stable value option with a higher crediting rate available from other providers." (*Id.* ¶ 183.)  Plaintiffs further allege that "[r]educing fees paid by Cedars-Sinai itself to VOYA in exchange for a significant reduction in the guaranteed minimum crediting rating . . . was a breach of the dut[y] of prudence[.]" (*Id.* ¶ 179.)  Plaintiffs produce evidence showing that the Cedars-Sinai Board of Directors' Pension Investment Committee (the "PIC") was made aware that the "Stable Value Fund is an expensive product and . . . participants may be playing [sic] for an overpriced bond fund which is something we may not want to offer." (Ex. A to Humphrey Suppl. Decl. at 5, Doc. 94-1.)  This sufficiently evidences that Plan participants, including Plaintiffs, were harmed by Defendants' conduct.  Defendants' argument to the contrary, (*see* Opp. at 21–22), in addition to relying on a misunderstanding of the SAC, cites only to out-of-circuit authority dismissing or affirming dismissal of claims under 12(b)(6), not for lack of standing.  Moreover, the claims asserted in those cases are distinguishable from the claim asserted here.  *See, e.g.*, *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48–50 (1st Cir. 2018) (Plaintiffs failed to state a claim where their complaint as to the Stable Value Fund was not as to an imprudent process, but as to the "too conservative" nature of the fund.)

Because Plaintiffs have standing as to their investment in the Stable Value Fund, the Court concludes Plaintiffs have Article III standing to bring claims for damages and equitable relief for breach of the fiduciary duties of prudence, monitoring and loyalty, and, instead, analyzes Defendants' arguments in the context of Rule 23's requirements.  *See infra* at Section III.B.

### 2.  Injunctive Relief

Defendants also assert that Plaintiffs lack standing to seek prospective relief.  (Opp. at 22–23.)  On this point, the Court agrees.

Plaintiffs propose only Fowler as a class representative for the injunctive relief sub-class, as Mena is no longer a participant in the Plan.  (Mem. at 12; Reply at 5 n.1.) Defendants contended in opposition that Fowler does not have standing because she "indicated in her deposition that she intends to withdraw her account balance from the Plan soon, whenever she has the time to focus on the Plan."  (Opp. at 22.)  In reply, Plaintiffs submitted a supplemental declaration from Fowler stating that she "recently withdrew $15,500 from [her] 401k Plan, but [she] still ha[s] $3500 in the Plan in the current investment" and "do[es] not anticipate withdrawing any more funds in the foreseeable future."  (Fowler Suppl. Decl. ¶ 2, Doc. 94-2.)  While Fowler's supplemental declaration might negate Defendants' argument that Fowler lacks standing based on an intention to withdraw her account balance, in sur-reply, Defendants informed the Court that on December 2, 2024, the Retirement Plans' Committee met at a regularly scheduled meeting and adopted various amendments to the Plan, including one increasing the involuntary cash-out threshold in the Plan from $1,000 to $7,000 as permitted under Section 301 of the Consolidated Appropriations Act, 2023, PL 117-328 ("SECURE Act 2.0").  (Sur-reply at 1; Ex. A to Schwebs Decl. ISO Sur-Reply, Doc. 95-1; *see also* Schwebs Decl. ISO Sur-Reply ¶¶ 5, 8.)[4]  Because Fowler's account balance is below $7,000, she will be cashed out of the Plan either by the end of 2024 or in the first quarter of 2025.  (Fowler Suppl. Decl. ¶ 2; *see also* Sur-reply at 1–2.)  As a result, Fowler will not have standing to pursue injunctive relief.  At the hearing, Plaintiffs indicated that they would seek leave to amend should the Court find Fowler does not have standing to seek injunctive relief.

### B.  Rule 23

---

[4] Page numbers referenced in the Court's discussion of Defendants' Sur-reply refer to the page numbers in the Proposed Sur-Reply (Doc. 95-1), rather than ECF stamped page numbers.

Having determined that Plaintiffs lack standing to bring a claim for injunctive relief, the Court does not analyze whether Plaintiffs satisfy Rule 23 with respect to that claim. *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249–50 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification.") (internal citation and quotation omitted). As to Plaintiffs' claims for violations of the fiduciary duties of prudence, monitoring, and loyalty, for the reasons stated below, the Court concludes that Plaintiffs do not satisfy Rule 23(a)'s requirements.

### 1. Rule 23(a)

#### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds*, 555 F.3d 581 (9th Cir. 2012). Here, Plaintiffs show that there are 16,140 members of the proposed class (Ex. 4 to Humphrey Decl., Form 5500 at 3, Doc. 91-6), and Defendants do not contest the numerosity of the proposed class (*see generally* Opp.). Accordingly, Rule 23(a)(1)'s numerosity requirement is satisfied.

#### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, the "determination of [the common contention's] truth or falsity [must] resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) has been construed permissively. *Staton v. Boeing Co.*, 313 F.3d 447, 462 (9th Cir. 2002). "[F]or the commonality requirement to be met, there must

11

only be one single issue common to the proposed class." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

Plaintiffs contend that this case involves the following common questions, among others: whether Defendants are fiduciaries of the Plan; whether Defendants breached their fiduciary duty of prudence with respect to the Plan; whether Defendants breached their duty to monitor other fiduciaries of the Plan; and whether Defendants breached their duty of loyalty to the Plan. (SAC ¶ 199; *see also* Mem. at 15–16.) Defendants do not directly contend that Plaintiffs fail to meet the commonality requirement; rather, Defendants argue that Plaintiffs "have not satisfied the requirement[] of . . . commonality to the extent [it] is intertwined with Adequacy." (Opp. at 23.)

Here, Plaintiffs' claims all have the same high-level focus on the actions of Defendants and how Defendants' conduct affected the Plan as a whole. District courts in this Circuit have found commonality under similar circumstances. *See, e.g.*, *Munro v. Univ. of S. California*, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) (finding plaintiffs proffered sufficient facts to show that class-wide proceedings would generate common answers where plaintiffs sued "on behalf of the Plans, the centralized administration of which [was] common to all putative class members."); *see also Tibble v. Edison Int'l*, 2009 WL 6764541, at *4 (C.D. Cal. June 30, 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108–09 (N.D. Cal. 2008). The Court concludes that Plaintiffs have satisfied this "permissive" requirement. *Kanawi*, 254 F.R.D. at 108.

### c. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds,*

564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.*

Plaintiffs argue that typicality is met because "Plaintiffs and all class members are bringing the same claims under the same legal and remedial theory [and] the claims of Plaintiffs and class members all arise from . . . Defendants' imprudence in recommending, selecting, and retaining Plan investment options." (Mem. at 18.)  As with commonality, Defendants argue that Plaintiffs "have not satisfied the requirement[] of typicality . . . to the extent [it] is intertwined with Adequacy." (Opp. at 23.)

Unlike commonality, the Court concludes that—except as to a class of those who invested in the Stable Value Fund—Plaintiffs have failed to make the necessary showing as to typicality.  Specifically, while the Plaintiffs' investment in one challenged fund provides them with standing, it is not sufficient to show that their claims are "reasonably coextensive" with those of absent class members who have incurred the alleged excessive recordkeeping fees or those who have invested in the alleged high-expense share class funds.  *Dukes*, 603 F.3d at 613 (internal citation and quotation omitted).

First, Plaintiffs have failed to demonstrate actual injury as to their theory that Defendants' breached their fiduciary duties by charging excessive recordkeeping fees, or at the very least, they have failed to demonstrate that they do not have conflicts with other class members as to this key aspect of their breach of fiduciary duty claims.  The SAC alleges that class members paid fees between $59 and $106 while a "a $42 per participant number" would have been reasonable.  (SAC ¶¶ 61, 63.)  The SAC also notes, however, that the "actual reasonable fee for the services provided to the Plan may be lower [than $42] and is subject to proof at trial." (*Id.* ¶ 63.)  Plaintiffs have paid less than $42 per year during the relevant period.  (Birmingham Decl. ¶ 8, Doc. 93-1; *see also* Exs. H, I to Schwebs Decl., Doc. 41-2; Opp. at 17.)  From 2017 to 2022, Fowler paid an average fee of $22.10, and Mena paid an average of $38.31.  (Birmingham Decl. ¶ 8.)  While the Court

rejected Defendant's Article III standing argument for dismissal at the pleadings stage, the Court now finds it appropriate to address as a class certification issue, per *Melendres*.

In their SAC, as in *Sabana*, Plaintiffs allege that recordkeeping services "are essentially fixed and largely automated," that costs "depend on the number of participants, not the number of assets in the participant's account" and that, therefore, "the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account." (SAC ¶¶ 51, 52, 54.) And, as in *Sabana*, 2024 WL 755723, at *3, Plaintiffs criticize the practice of paying recordkeeping fees through revenue-sharing offered by higher-cost share classes because such payments "bear[] no relation to the actual cost of providing services or the number of plan participants and resulted in the payment of unreasonable recordkeeping fees." (SAC ¶ 57; *see also id.* ¶ 83.) Based on these allegations, "[t]he only fair reading of the Complaint implies that Plaintiff[s] believe[] that it would have been more prudent to pay recordkeeping fees directly and at rates proportional to the services provided, which do not vary from participant to participant." *Sabana*, 2024 WL 755723, at *5. But the Court need not speculate as to what Plaintiffs believe would have been more prudent as they directly complain that Defendants "should have . . . negotiated a per-person flat fee." (SAC ¶ 56.) If $42 is a reasonable average fee—and Plaintiffs assert as much—it follows that $42 is a reasonable "per-person flat fee" for each individual participant, including Plaintiffs. (*See id.*) Because Plaintiffs paid average fees below $42, they have not established an injury as to their claim of breach of fiduciary duty based on unreasonable recordkeeping fees. While this was not fatal to Article III standing, it is appropriate for consideration as to Rule 23(a)'s typicality requirement. *See Melendres*, 784 F.3d at 1263; *but see Coppel,* 347 F.R.D. at 353 (framing the issue of injury based on excessive recordkeeping fees as one of constitutional standing, but finding standing where at least one plaintiff paid "well over" the reasonable amount alleged in the complaint). And "a named plaintiff's motion for class certification should not be granted if there is a danger

that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)). Here, Plaintiffs' factual situation will "require[] [them] to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Id.* Specifically, Plaintiffs will have to prepare to meet a defense that Defendants did not violate the fiduciary duty of prudence because Plaintiffs were not subject to excessive recordkeeping fees.

Furthermore, even if Plaintiffs could show an actual injury, it would likely be at the expense of other class members who paid more than the average reasonable rate for recordkeeping fees. Specifically, at the class certification hearing, Plaintiffs' counsel would not commit to how they might calculate a reasonable fee; likely, because calculating it as a per-person flat fee as described in the SAC would show that Plaintiffs had suffered no injury. But using some other measure of a reasonable fee, such as an asset-based fee, would not only contradict the SAC's allegations, but also create a conflict between Plaintiffs and other class members.

Second, the Court is not convinced that Plaintiffs have sufficiently established that plan-wide breaches of fiduciary duties arose "from the same course of events." *Armstrong v. Davis*, 275 F.3d 849, 868–69 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). While courts within the Ninth Circuit, including this one, generally hold that named plaintiffs in ERISA actions may bring claims on behalf of funds in which they did not invest (*see, e.g., In re Prime,* 2023 WL 9319290 at *5–6; Coppel*, 347 F.R.D. at 357), here there appears to be significant "disjuncture" between the claims of Plaintiffs and those of the putative class. *See Melendres*, 784 F.3d at 1261.

This is because the nature of the allegations regarding the six challenged revenue sharing funds in which Plaintiffs did *not* invest are not similar to the single fund in which Plaintiffs did invest, namely, the Stable Value Fund. This is evident from the SAC itself.

15

As noted above, in the SAC, Plaintiffs set forth four separate categories of factual allegations supporting each of their four theories of imprudence.  The factual allegations underlying the alleged breaches of fiduciary duties in connection with the Stable Value Fund are entirely distinct from the factual allegations supporting the alleged breaches of fiduciary duties as to the other challenged funds.  (*Compare* SAC ¶¶ 85–157 *to* ¶¶ 158–195.)  And the Court has not been provided with any facts beyond these allegations that would indicate that the selection and retention of the challenged revenue sharing funds were caused by the same deficiencies in Defendants' evaluation process that led to the selection and retention of the Stable Value Fund.  Although Plaintiffs cite generally to the Investment Committee Charter and Investment Policy Statement ("Investment Policy Statement") which "governed the Plan's evaluations of all challenged investments,"[5] at the class certification stage the Court expects a more granular showing.  *See, e.g., In re Prime*, 2023 WL 9319290, at *4 (citing expert testimony provided by plaintiffs that "the selection and retention of the challenged funds were caused by the same alleged deficiencies in [the defendants'] evaluation process," and then listing the specific processes.)

Here, there are substantial differences between the complained-of-conduct impacting Plaintiffs' investment fund and the conduct impacting those members of the class who invested in the six revenue sharing funds.  For instance, Plaintiffs' claims regarding the Stable Value Fund indicate that for that fund "Defendants had the opportunity and duty to evaluate the investment in advance" because its "crediting rate" is "set in advance by VOYA."  (SAC ¶ 165.)  Plaintiffs do not, and indeed cannot, make any similar complaint as to the revenue sharing fund.  (*See id.* ¶ 160 (describing the unique features of stable value funds); *see also* Investment Policy Statement at 14 (same).)  Likewise, Plaintiffs' allegations as to the Stable Value Fund largely revolve around Defendants' contract with VOYA relating to its guaranteed minimum crediting rate.  (*See, e.g.*, SAC ¶¶ 165, 175–195.)  Because proof of Plaintiffs' claims involving the Stable

---

[5] (Reply at 6; *see also* Ex. 6 to Humphrey Decl., Investment Policy Statement, Doc. 91-8).

Value Fund will do little to nothing to advance the claims relating to the revenue sharing funds, Plaintiffs' claims are not typical of the claims of other class members, except those who also invested in the Stable Value Fund.

For these reasons, Plaintiffs cannot satisfy Rule 23(a)'s typicality requirement as to the class as they have defined it.

### d. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. It is commonly noted that the typicality and adequacy requirements overlap because "in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." Newberg on Class Actions § 3:32 (5th ed. 2015), *quoting In re American Medical Systems, Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). So the Court begins its adequacy analysis by noting that, for the same reasons Plaintiffs' claims lack typicality, Plaintiffs are inadequate representatives; they do not have an incentive to pursue claims where they have no injury or where there is little to no overlap in proof.

Defendants make two additional adequacy arguments. They assert that Plaintiffs "lack the requisite minimal degree of knowledge regarding the action." (Opp. at 25–27.) And they contend that Fowler is ineligible to serve as class representative due to her "vindictiveness[,]" "lack of candor[,]" and "lack [of] time and ability to adequately represent the class." (*Id.* at 27–29.)

To satisfy the second factor for adequacy, "the class representative must possess at least a minimal degree of knowledge regarding the class action." *Stuart v. Radioshack Corp.*, 2009 WL 281941, at *9 (N.D. Cal. Feb. 5, 2009) (citations and internal quotations

omitted); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 525 (C.D. Cal. 2012) ("Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.") (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987)). On this basis, Defendants contend that Fowler and Mena are inadequate because they "have demonstrated a total lack of personal knowledge of their claims, retirement plans, their investments, Defendants, and who they seek to represent." (Opp. at 26; *see also id.* at 11–13.) While the Court concludes that named plaintiffs in an ERISA action need not have any particular level of financial sophistication, and that a basic knowledge of the facts and claims is sufficient, the Court agrees that this low bar is not met here.

Both Plaintiffs submitted declarations in support of class certification stating that they "understand . . . that this lawsuit generally alleges that excessive fees were charged to Plan Participants and that certain investments underperformed." (Fowler Decl. ¶ 3; Mena Decl. ¶ 3.) However, these boilerplate declarations do not alleviate the Court's concerns where Plaintiffs' depositions reveal an almost total lack of familiarity with the facts of the case. For instance, Fowler testified that she does not know how her fund became invested in the Stable Value Fund, (Ex. B to Birmingham Decl., Fowler Depo. at 75:20–76:9); was not claiming any damages for the interest that was credited under the Stable Value Fund, (*id.* at 79:8–11), and, in fact, does not know what damages are being sought in the lawsuit (*id.* at 80:21–23). She thought that her claim as to the Stable Value Fund and the Plan was that it was "mismanaged" because "it was investing in the wrong companies[,]" (*id.* at 79:24–80:5.), and she is not aware that the SAC complains about recordkeeping fees or whether she suffered any damage due to recordkeeping fees. (*Id.* at 83:17–25.) Similarly, Mena, a native Spanish speaker, testified through a Spanish translator that she wants to be a class representative "to be able to help the people who were retiring but not because of

something else." (Ex. E to Birmingham Decl., Mena Depo. at 166:8–10.)  Upon a full reading of the transcript, it is clear that Mena had no understanding of her participation in the Plan and could not answer even the most basic of questions.  For example, when asked if she recalled investing in a stable value option, she answered, "I do not remember about anything." (*Id.* at 160:15–17.)  This was indicative of most answers Mena provided.  Mena indicated that she has no recollection of her investments in the Plan (*id.* at 163:8–21), no knowledge of the investments made under the Plan (*id*. at 168:9–11), and does not understand what a recordkeeping fee is.  (*Id.* 175:14–177:10.)  Even trying to refresh her recollection with her prior responses to requests for admission did not work.  (*See id*. at 163:8–21.)

Again, an extensive understanding of ERISA, revenue sharing, and investing is not required for Plaintiffs to represent the ERISA class, but adequacy must mean something, at the very least there cannot be "blind reliance on class counsel." *Stuart*, 2009 WL 281941, at *10 (collecting cases).  Here, neither Plaintiff has established even a de minimis familiarity with the facts of the case, and the Court cannot assure itself that they have any role beyond that of "furnishing their names as named plaintiffs." *Keegan*, 284 F.R.D. at 525 (internal citation and quotation omitted).  Plaintiffs' counsel's argument at the hearing on this motion, which sought to support Plaintiffs' adequacy by asserting that neither would have to testify at trial, was simply a way of saying that the named plaintiffs are irrelevant in this case—a proposition the Court does not accept.  Accordingly, Mena and Fowler are "unable . . . to protect the interests of the class[.]" *Id.* (internal citation and quotation omitted); *see also Stuart*, 2009 WL 281941, at *9.

**Fowler's Personal Integrity.**[6]  Though honesty and trustworthiness "are not determinative factors in finding that the class representatives will fairly and adequately

---

[6] Plaintiffs asked the Court to take judicial notice of the Los Angeles Superior Court's judgment and case docket in *Fowler v. Cedars-Sinai, et al*., Los Angeles Superior Court, Case No. BC480490.  (Request for Judicial Notice ("RJN"), Doc. 94-3).  The Court need not, and does not,
(footnote continued)

protect the interests of the class, such factors *may* be considered by the court." *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2008 WL 2038047, at *3 (N.D. Cal. May 12, 2008) (emphasis added) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)). Having determined that Fowler cannot satisfy the second factor for adequacy under Rule 23(a)(4) due to her lack of a minimal degree of knowledge regarding this case, the Court declines to exercise its discretion to consider whether Fowler's integrity—or lack thereof—also renders her inadequate to serve as class representative.

### 2. Rule 23(b)

Because Plaintiffs cannot satisfy Rule 23(a), the Court does not consider whether they satisfy one of the three subsections of Rule 23(b).

### C. Leave to Amend

In Reply, Plaintiffs request the opportunity to "name a class representative in lieu of Plaintiff Zimmerman for the investment in revenue sharing funds" in the event that the Court finds Plaintiffs lack standing or adequacy to represent such claims. (Reply at 11.) Plaintiffs do not identify a specific plaintiff as proposed class representative; nor do they give a proposed timeline as to when they may be able to find a suitable candidate. (*Id.*) The operative Scheduling Order in this case provides that the last day to file a motion to add parties and amend the pleadings was January 26, 2024. (Scheduling Order at 2, Doc. 30.) On April 29, 2024, the Court granted Plaintiffs' motion for leave to file a Second Amended Complaint adding Mena and Fowler as named plaintiffs. (Doc. 44.)

If a plaintiff seeks to amend its pleadings after the deadline set in the Court's Scheduling Order, the plaintiff must first "satisfy the more stringent 'good cause' showing required under Rule 16." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations, Inc.*, 975

---

rely on either of these documents or information contained therein in deciding the present motion. As such, the request for judicial notice is DENIED as MOOT.

F.2d 604, 609 (9th Cir. 1992).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.*  If good cause is shown, a party must then demonstrate that amendment is proper under Rule 15. *Johnson*, 975 F.2d at 608.  Courts "determine[] the propriety of a motion to amend [under Rule 15] by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility."  *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (internal citation and quotation omitted).

Plaintiffs show good cause to amend the Scheduling Order due to Zimmerman's unexpected announcement that he could no longer serve as a class representative "shortly before the scheduled filing of Plaintiffs' motion for class certification."  (Reply at 12; *see also* Humphrey Suppl. Decl. ¶ 3.)  Plaintiffs also show good cause to amend in light of Defendants' recent change to the Plan's involuntary cash-out threshold.  And Plaintiffs did not engage in undue delay or act in bad faith in seeking leave to amend following these changed circumstances.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion and GRANTS Plaintiffs' request for leave to amend for the exclusive purpose of substituting an alternative class representative.  Any amendment must be filed **within 21 days** of the issuance of this Order.


DATED:  December 18, 2024

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE