UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ZIMMERMAN, et al., | CASE NO. 5:23-cv-01124-JLS-SP |
| Plaintiffs, | |
| v. | **ORDER CONDITIONALLY GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FAIRNESS HEARING (DOC. 114)** |
| CEDARS-SINAI MEDICAL CENTER, et al., | |
| Defendants. | |

Before the Court is an unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Fairness Hearing filed by Plaintiffs Rosa Arevalo, Michelle Cornejo, and Theresa Phuong T Mai. (Mot., Doc. 114; Mem., 114-1.) The motion asks the Court to (1) preliminarily certify the proposed Class; (2) preliminarily approve a proposed settlement of this class action; (3) appoint Christina Humphrey Law, P.C. and Bradley Grombacher, LLP as Class Counsel; (4) approve the Class Notice and Plan of Allocation; and (5) schedule the final fairness hearing. (Mot. at 3.) The Court held a hearing on May 2, 2025. At the hearing, the Court requested additional information regarding the Settlement; Plaintiffs submitted supplemental briefs and declarations in response to the Court's request on May 23, 2025, and June 9, 2025. (Supp. Mem., Doc. 119; First Supp. Decl., Doc. 122; Second Supp. Decl., Doc. 123.) Plaintiffs also submitted a corrected declaration of Class Counsel, revising a typo as to the estimated potential damages. (Corrected Humphrey Decl., Doc. 121; *see also* Not. of Errata, Doc. 120.)

Having held oral argument and considered the briefs and evidence in support thereto, the Court now CONDITIONALLY GRANTS the motion for the reasons stated below. As explained more fully below, Plaintiffs must submit a revised class notice **within five (5) days** of the issuance of this Order.

## I.  BACKGROUND

Plaintiffs[1] initiated this putative class action on June 13, 2023. (*See* Compl., Doc. 1.) The operative Third Amended Complaint ("TAC") asserts claims against Defendants Cedars-Sinai Medical Center, The Cedars-Sinai Board Of Directors' Pension Investment Committee, The Cedars-Sinai Defined Contribution Retirement Plans' Committee, Andy Ortiz, Debra Lee, Eric Holoman, Joshua Lobel, Leslie Vermut, Richard Sinaiko, Steven Romick, Mark Rapaport, James Nathan, David Wrigley, Jeff Smith, David Marshall, Pasy

---

[1] The first Complaint in this action included one named Plaintiff, Jason Zimmerman, who formally withdrew as class representative shortly before the scheduled filing of Plaintiffs' Motion for Class Certification due to his relocation to the East Coast. (Docs. 90, 92.)

Wang, and Bryan Croft (collectively "Defendants") on behalf of the Cedars-Sinai Health System 403(B) Retirement Plan (the "Plan"). (TAC, Doc. 104.) Plaintiffs allege that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. (*Id.* ¶¶ 206–25.)

Plaintiffs bring claims against Defendants for (1) breach of fiduciary duty of prudence, (2) breach of fiduciary duty to investigate and monitor the Plan investments and covered service providers, and (3) breach of the duty of loyalty. (*Id.*) To support those claims, Plaintiffs divide their factual allegations into four separate categories, which the Court referenced in its Order denying Defendants' motion to dismiss as Plaintiffs' "theories of imprudence." (Order Denying MTD FAC at 2, Doc. 38.) The first is that Defendants caused the Plan to pay excessive recordkeeping fees. (TAC ¶¶ 52–86.) The second is that Defendants invested in expensive share classes when identical lower-cost share classes were available. (*Id.* ¶¶ 87–127.) The third is that Defendants selected and retained certain allegedly underperforming revenue-sharing funds. (*Id.* ¶¶ 128–59.) The fourth is that Defendants retained a higher cost, higher risk stable value fund—the Voya Stable Value Option (the "Stable Value Fund")—when other investment vendors offered superior alternatives. (*Id.* ¶¶ 160–97.)

### A. Procedural History

Plaintiffs filed their Complaint on June 13, 2023. (*See* Compl.) Several rounds of motions to dismiss and amendments to the complaint commenced thereafter. On September 5, 2023, Defendants Cedars-Sinai Medical Center and The Cedars-Sinai Board of Directors' Pension Investment Committee filed a motion to dismiss, (First Motion to Dismiss ("MTD"), Doc. 20), which the Court denied as moot upon Plaintiffs' filing of their First Amended Complaint ("FAC"). (Order Denying as Moot MTD, Doc. 27.) Plaintiffs' First Amended Complaint ("FAC") added The Cedars-Sinai Defined Contribution Retirement Plans' Committee and Andy Ortiz as Defendants. (FAC, Doc. 23.) On November 2, 2023, Defendants Cedars-Sinai Medical Center, The Cedars-Sinai

3

Board Of Directors' Pension Investment Committee, The Cedars-Sinai Defined

Contribution Retirement Plans' Committee, and Andy Ortiz moved to dismiss the FAC,

which the Court denied on February 18, 2024.  (MTD FAC, Doc. 28; Order Denying MTD

FAC.)  On March 21, 2024, Plaintiffs filed a motion for leave to file a Second Amended

Complaint ("SAC"), which the Court granted on April 29, 2024.  (Mot. for Leave, Doc.

40; Order Granting Mot. for Leave, Doc. 44.)  Plaintiffs' SAC added Asia Fowler and

Lillian Mena as named Plaintiffs, and the following parties as Defendants: Debra Leeb,

Eric Holoman, Joshua Lobel, Leslie Vermut, Richard Sinaiko, Steven Romick, Mark

Rapaport, James Nathan, David Wrigley, Jeff Smith, David Marshall, Pasy Wang and

Bryan Croft.  (SAC, Doc. 45.)  The SAC also added a claim for breach of the fiduciary

duty of loyalty against all Defendants and a request for injunctive relief.  (*See id.*)

On September 10, 2024, Plaintiffs filed a motion for class certification.  (Mot. for

Class Cert., Doc. 91.)  After holding a hearing on December 6, 2024, the Court denied the

motion, but found good cause to grant Plaintiffs leave to amend the SAC.  (Order Denying

Class Cert. at 21, Doc. 100.)  In denying Plaintiffs' motion, the Court concluded that (1)

Plaintiffs lacked standing to bring a claim for injunctive relief; and (2) Plaintiffs could not

satisfy Rule 23(a)'s typicality and adequacy requirements.  (*See generally id.*)  As to

typicality, the Court held that the investment of named Plaintiffs—Asia Fowler and Lillian

Mena—in only one challenged fund was "not sufficient to show that their claims [were]

'reasonably coextensive' with those of absent class members who ha[d] incurred the

alleged excessive recordkeeping fees or those who ha[d] invested in the alleged high-

expense share class funds."  (*Id.* at 13.)  The Court further noted that because "there

appear[ed] to be significant disjuncture between the claims of Plaintiffs and those of the

putative class," it was "not convinced that Plaintiffs ha[d] sufficiently established that

plan-wide breaches of fiduciary duties arose from the same course of events."  (*Id.* at 15

(internal citation and quotation omitted).)  As to adequacy, the Court concluded that "for

the same reasons Plaintiffs' claims lack typicality, Plaintiffs [were] inadequate

representatives; they [did] not have an incentive to pursue claims where they [had] no injury or where there [was] little to no overlap in proof." (*Id.* at 17.)  The Court's conclusion was also based upon its finding that "neither Plaintiff ha[d] established even a de minimis familiarity with the facts of the case[.]" (*Id.* at 19.)

On December 18, 2024, the parties attended an in-person mediation with Todd Jackson of Feinberg Jackson Wortham & Wasow LLP.  (Mem. at 14–15.)  At the end of mediation, the parties did not settle but continued to engage in settlement discussions.  (*Id.* at 15.)  On January 2, 2025, Plaintiffs filed a motion for reconsideration of the Court's Order Denying Class Certification, which the Court denied on January 30, 2024.  (Mot. for Reconsideration, Doc. 102; Order Denying Mot. for Reconsideration, Doc. 110.)  On January 8, 2025, Plaintiffs filed the TAC, adding Rosa Arevalo, Michelle Cornejo, and Theresa Phuong T Mai as named Plaintiffs.  (TAC ¶¶ 13–14, 16.)

On February 26, 2025, the parties represented that they had reached a settlement agreement.  (Notice of Settlement, Doc. 111.)  On April 1, 2025, the parties presented their finalized Settlement Agreement, and Plaintiffs filed the instant motion for preliminary approval of settlement and class certification.  (*See* Mot.)

The Court held a hearing on the motion on May 2, 2025.  At the hearing, the Court requested additional information in support of the proposed Settlement as to (1) the possibility of allocating settlement distributions according to Class Members' fund-specific investment history; (2) the method of calculating estimated potential damages; (3) the accurate figure for estimated potential damages; and (4) the Class Representatives' views on the Settlement.  (Transcript at 7:8–8:7, 12:11–14, 15:13–16:6, Doc. 117.)  The Court also requested revisions to the proposed class notice.  (*Id.* at 18:13–19:24.)  Plaintiffs' supplemental briefs and amended notice addressed the concerns and questions the Court raised at the hearing.

As to the Plan of Allocation, Plaintiffs confirmed that the Plan's investment advisor, Voya Financial Partners, could provide detailed fund-level investment information for

participants in the Plan during the class period. (Second Supp. Decl. ¶ 4; *see also* TAC ¶
35.) Based on this, the parties submitted a revised Plan of Allocation, which allocates
recovery in accordance with Class Members' investment history in the challenged funds
and the relative valuation of such funds to the Settlement. (Second Supp Decl. ¶¶ 3–6; *see
also* Ex. 2 to Second Supp. Decl., Plan of Allocation, Doc. 123 at 16.)

Plaintiffs also submitted a supplemental declaration addressing the method of
calculating potential damages. This declaration provides that Plaintiffs' experts calculated
potential damages on the first and second set of allegations for excessive recordkeeping
fees and share class violations "by identifying the annual amounts collected from
participants that exceeded the reasonable cost of recordkeeping services [] estimated [at]
$42 per person[.]" (First Supp. Decl. ¶¶ 6–7.) As to the Stable Value Fund allegations, the
experts calculated potential damages by "comparing the actual fee charged . . . to a
reasonable benchmark fee . . . during the period from June 13, 2017 to September 30,
2018." (*Id.* ¶ 8.) Only 2017 and 2018 were evaluated because the Stable Value Fund fee
was reduced in September 2018. (*Id.*) Finally, the expert calculated potential damages on
Plaintiffs' underperformance allegations by comparing the actual returns of the three
revenue-sharing funds named in the TAC— the Allspring Discovery SMID Cap Growth,
AB Discovery Value, or AB Global Bond funds—"against the returns of their respective
Morningstar Category Index benchmarks." (*Id.* ¶ 10; *see also* TAC ¶¶ 143–59.)

Plaintiffs also submitted declarations from named plaintiffs Rosa Arevalo, Michelle
Cornejo, and Theresa Phuong T Mai. (Arevalo Decl., Doc. 122-1; Cornejo Decl., Doc.
122-2; Phuong T Mai Decl., Doc. 122-3.) The declarations provide that the named
Plaintiffs were participants in the Plan during the relevant time period. (Arevalo Decl. ¶ 2;
Cornejo Decl. ¶ 2; Phuong T Mai Decl. ¶ 2.) Specifically, Phuong T Mai invested in the
Allspring Discovery SMID Cap Fund, Arevalo primarily invested in the Stable Value
Fund, and Cornejo invested in the Stable Value Fund and the AB Discovery Value Fund.
(Arevalo Decl. ¶ 2; Cornejo Decl. ¶ 2; Phuong T Mai Decl. ¶ 2.) The declarations also

express support for the Settlement.  (Arevalo Decl. ¶ 6; Cornejo Decl. ¶ 6; Phuong T Mai
Decl. ¶ 6.)

## B.  Settlement Agreement

The proposed "Settlement Class" is defined as "all Participants and Beneficiaries of
the Current Participants of the Cedars-Sinai Health System 403(B) Retirement Plan from
June 13, 2017, to April 1, 2025[] who did not serve as members of Cedars-Sinai or Cedars-
Sinai's Board of Directors and/or Committees."  (Ex. 1 to Corrected Humphrey Decl.,
Settlement Agreement ¶ 1.44, Doc. 121 at 19.)  The parties estimate that the Settlement
Class consists of approximately 25,000 individuals as of March 1, 2025.  (Mem. at 10.)

The Settlement Agreement provides that Defendants will pay $2,970,000 to fund
the Settlement.  (Settlement Agreement ¶ 1.26.)  The Gross Settlement Amount will be
used to distribute payments to Class Members, and to cover payments for attorneys' fees,
litigation costs, taxes, administration costs, costs associated with the Plan of Allocation,
costs associated with the proposed Independent Fiduciary, and service awards.  (*Id.* ¶¶ 1.2,
1.29, 2.2, 4.4.)  The Settlement proposes the following amounts for these various
categories of payments: (1) attorneys' fees not to exceed one third of the fund, or
$990,000, if approved by the Court at final approval; (2) litigation costs not to exceed
$140,000, if approved at final approval; (3) Plan of Allocation fees not to exceed $1,500;
(4) Independent Fiduciary costs not to exceed $25,000; and (5) service awards for the three
proposed Class Representatives not to exceed $7,500 each, if approved by the Court at
final approval.  (*Id.* ¶¶ 1.2, 1.3, 1.7.)  The parties also estimate settlement administration
costs as $97,550 but note that such costs are subject to adjustment based on the Settlement
Administrator's receipt of the Class Member List.  (*Id.* ¶ 1.2; *see also* Mullins Decl. ¶ 10,
Doc. 114-4.)  The remaining amount, which the Court estimates as $1,693,450 if all other
payments are approved, will be distributed pursuant to the parties' Plan of Allocation.
(Plan of Allocation.)  That Plan of Allocation provides that the net settlement proceeds will
be distributed as follows: "60% will be distributed to all participants to address

recordkeeping-related claims; 30% will be allocated to participants" in funds challenged for underperformance; and "10% will be allocated to participants who invested" in the Stable Value Fund." (Second Supp. Decl. ¶ 5; *see also* Plan of Allocation §§ II.A–B.) "This revised allocation aligns with the relative valuation of the settlement claims." (Second Supp. Decl. ¶ 6.) The Stable Value Fund allegations are given less weight as "discovery materials support certain liability allegations raised" as to the that fund, but "also substantially limit the extent of recoverable losses." (First Supp. Decl. ¶ 9.) In addition, "Plaintiffs ultimately gave less weight to the performance-based arguments in light of the significant emphasis courts have recently placed on fiduciary process." (*Id.* ¶ 11 (citing cases).)

Allocation of the net settlement fund will be calculated by first determining the "weighted sum of [each Class Member's] positive account balances for each year (or partial year) of the Class Period[.]" (Plan of Allocation § II.B.1.) These amounts "will constitute the Class Member's 'Balance.'" (*Id.*) Then, 60% of the net settlement will be allocated "pro rata to all Class Members, in proportion to their Balance as compared to the sum of all Class Members' Balances." (*Id.* § II.B.2.) For Class Members who invested in any or all of the underperforming funds, 30% of the net settlement fund will be allocated pro rata to such Class Members "based on their weighted investment balances in [those] funds." (*Id.* § II.B.3.) For Class Members who invested in the Stable Value Fund, 10% of the net settlement will be allocated pro rata "based on th[e] [Class Members'] weighted investment balances in the [] Stable Value Fund." (*Id.* § III.B.4.) The amounts resulting from these calculations "shall be known as the 'Preliminary Entitlement Amount.'" (*Id.* § II.C.) No former participant in the Plan whose entitlement is less than five dollars ($5) will receive payment. (*Id.*) "Amounts less than $5 initially allocated to [] Former Participants shall be allocated to the remaining Settlement Class Members in proportion to their Preliminary Entitlement Amounts and shall be added to [such amounts] to create their Final Entitlement Amounts." (*Id.*)

Class Members' Final Entitlement Amounts will be distributed as follows. For Class Members with accounts in the Plan, their Final Entitlement Amount will be contributed to the Plan and allocated into their Plan Account. (*Id.* § II.D.) Class Members without accounts under the Plan will be paid directly by the Settlement Administrator via mailed check. (*Id.* § II.E.) All checks issued pursuant to the Plan of Allocation will expire 180 days after their issue date. (*Id.* § II.H.) Prior to mailing any checks, Defendants will "use reasonable efforts" to "provide an updated Class Member List" to the Settlement Administrator. (Settlement Agreement ¶ 2.8.2.) Any residual funds will then be allocated to the proposed *cy pres* recipient, Pension Rights Center. (Plan of Allocation § II.H.) No sooner than 395 days after entry of Final Approval, any net settlement amount remaining in the Settlement fund will be paid to the Pension Rights Center. (*Id.* § II.I; *see also* Settlement Agreement ¶ 1.45.) The Settlement Agreement does not provide for injunctive relief, or other equitable, relief. (*See generally* Settlement Agreement.)

In exchange for the relief provided pursuant to the Settlement Agreement, the Class will release certain claims against Defendants. (*Id.* ¶¶ 1.37–1.37.6.) Released Claims include:

> [A]ny and all past, present, and future actual or potential claims … based in whole or in part on acts or failures to act during the Class Period … [t]hat were asserted or could have been asserted in the Class Action or that arise out of, relate to, or are based on any of the allegations … [s]et forth in the Complaint … including those that arise out of, relate in any way to, are based on, or have any connection with (a) the selection, oversight, retention, monitoring, compensation, fees, or performance of the Plan's investment options; (b) the selection, oversight, retention, or monitoring of plan service provider fees, expenses, or fee structures or arrangements; (c) disclosures or failures to disclose information regarding the Plan's investment options, service provider fees and expenses, or service provider fee structures or arrangements; (d) the management, oversight or administration of the Plan or its fiduciaries; or (d) alleged breach of the duties of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA with respect to the foregoing[.]

(*Id.* ¶¶ 1.37–1.37.1.)  The Settlement Agreement also provides that "with respect to any and all Released Claims" the Class Members and the Plan shall release "any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code[.]"[2]  (*Id.* ¶ 7.4; *see also id.* ¶ 1.37.5.)

Department of Labor regulations require that, where a settlement includes a litigation release between an ERISA plan and a party of interest like a company or its employees, an independent fiduciary approve the terms of the settlement.  *See, e.g., In re Marsh ERISA Litigation*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (citing Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75321-01 (Dec. 31, 2003)).  Prior to distribution, the Settlement will be reviewed by an independent fiduciary appointed by Defendants which will determine whether to "approve and authorize the settlement of Release Claims on behalf of the Plan[.]"  (Settlement Agreement at ¶ 2.1; *see also* Mem. at 9.)  The Settlement Agreement provides that the Independent Fiduciary will "notify Defendants directly of its determination, in writing (with copies to Class Counsel and Defense Counsel), which notification shall be delivered no later than ten (10) days before the Fairness Hearing."  (Settlement Agreement ¶¶ 2.1.2, 2.4–2.5; Mem. at 12.)

### C.  Class Notice and Response

Class notice will be sent through first-class mail and by publication to the website maintained by the proposed Settlement Administrator, ILYM Group, Inc.  (Settlement Agreement ¶ 2.9; *see also* Mem. at 13–14.)  Defendants shall provide the Settlement Administrator with a list of all Class Members, their last-known primary address, and their full Social Security numbers within twenty-one (21) days of the entry of the Court's preliminary approval Order.  (*Id.* ¶¶ 1.11, 2.8.1; *see also* Second Supp. Decl. ¶ 8.)  Within

---

[2] Section 1542 of the California Civil Code provides that "[a] general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."  Cal. Civ. Code § 1542.

ten days of its receipt of the Class Member list, and after checking for duplicate names or other discrepancies and confirming the mailing addresses, the Settlement Administrator will mail a Settlement Notice to each Class Member identified.  (Settlement Agreement ¶ 2.9; *see also* Mullins Decl. ¶¶ 5–6.)  If a mailed notice is returned, the Settlement Administrator will use skip trace to attempt to locate the Class Member and re-send such notice one additional time.  (Settlement Agreement ¶ 2.9; *see also* Mullins Decl. ¶ 7.)  The Notice will be sent in English and Spanish.  (Mullins Decl. ¶ 8; Mem. at 14.)  The Settlement Administrator will also establish a settlement website on which it will post the Notice, as well as the TAC, Settlement Agreement and related exhibits, and other key documents in this case; the Settlement Administrator will set up a toll-free number to receive correspondence and inquiries from Class Members.  (Settlement Agreement ¶ 13.2; *see also* Mullins Decl. ¶ 5.)   After receiving notice, Class Members will have until twenty-eight days prior to the final fairness hearing to object to the Settlement.  (Settlement Agreement ¶ 2.6.7.)

The Settlement Agreement provides that Defendants will send CAFA notice to the required authorities.  (Settlement Agreement ¶ 2.10.)

## II. CERTIFICATION OF THE CLASS

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Here, Plaintiffs seek conditional certification of the class under Rule 23(b)(1). (Mem. at 22.)

### A. The Proposed Class Satisfies Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This Court has repeatedly held that "[a]s a general rule, classes of forty or more are considered sufficiently numerous." *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *3 (C.D. Cal. July 17, 2024) (Staton, J.) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds*, 555 F.3d 581 (9th Cir. 2012)). Here, Plaintiffs contend that there are approximately 25,000 individuals in the proposed Settlement Class. (Mem. at 16.) Accordingly, Rule 23(a)(1)'s numerosity requirement is satisfied.

#### 2. Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The plaintiff must allege that the class members' injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each of the claims in

one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up).

Plaintiffs contend that commonality is met because Defendants "breached fiduciary duties owed to the Plan" and thus "Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan." (Mem. at 17.) Plaintiffs identify several core questions common to all Plan participants, including "(i) whether Defendants breached their fiduciary duties by maintaining the challenged investments in the Plan; (ii) whether the Plan suffered resulting losses; (iii) the manner in which to calculate the Plan's losses; and (iv) what equitable relief, if any, is appropriate in light of these alleged breaches." (*Id.* at 18.) District courts in this Circuit have found commonality where, as here, a plaintiff's claims all have the same high-level focus on the actions of a defendant and how a defendant's conduct affected a plan as a whole. *See, e.g.*, *Munro v. Univ. of S. California*, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) (finding plaintiffs proffered sufficient facts to show that class-wide proceedings would generate common answers where plaintiffs sued "on behalf of the Plans, the centralized administration of which [was] common to all putative class members."); *see also Tibble v. Edison Int'l*, 2009 WL 6764541, at *3–*4 (C.D. Cal. June 30, 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108–09 (N.D. Cal. 2008). As Plaintiffs' core allegations here concern Defendants' conduct in administering the Plan, the commonality requirement is satisfied.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) *rev'd on other grounds*,

564 U.S. 338 (2011) (quotations omitted).  As to the representative, "[t]ypicality requires
that the named plaintiffs be members of the class they represent."  *Id.*

Here, Plaintiffs allege breach of fiduciary duties arising out of Defendants'
management of the Plan as a whole, which included allowing excessive fees and
maintaining imprudent investments.  (*See* TAC ¶¶ 206–25.)  Plaintiffs assert the same
injuries arising from Defendants' conduct and seek recovery for those injuries for the Plan
as a whole.  (*Id.*; *see also* Prayer for Relief at 56–57; Mem.)  "Courts within the Ninth
Circuit have repeatedly concluded that the typicality requirement was satisfied in defined
contribution cases despite the fact that 'participants have individual accounts and select
their investment fund from a variety of available options.'"  *In re Northrop Grumman
Corp., ERISA Litig.*, 2011 WL 3505264, at *10 (C.D. Cal. Mar. 29, 2011) (collecting
cases).  That the Plan participants may have separate individual accounts, invest in
different funds, or obtain different returns on their investments, does not change the nature
of the claims or the legal arguments required to establish Defendants' liability.  *See id.*
Further, named Plaintiffs are "members of the class they represent."  *Dukes*, 603 F.3d at
613.  They "allege that they invested in at least one of the funds at issue in this action—
specifically the Allspring Discovery SMID Cap Fund, Stable Value Fund, and/or AB
Discovery Value fund.  (TAC ¶¶ 13–15; *see also* Phuong T Mai Decl. ¶ 2; Arevalo Decl. ¶
2; Cornejo Decl. ¶ 2.)  They also allege that they "suffered substantial losses and legal
damages in the form of higher fees and lower returns", and were "damaged by Defendants'
breaches of their fiduciary duties which impacted the Plan as a whole[.]"  (TAC ¶¶ 13–15.)
Because the named Plaintiffs are members of the class they seek to represent, and because
that class seeks recovery to the Plan due to Defendants' alleged breach of fiduciary duties
owed with respect to that Plan, Plaintiffs satisfy the typicality of Rule 23(a)(3).

### 4.  Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative
parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338 (2011).

### a.  Class Representatives

The Court is satisfied that the interests of the proposed Class Representatives are coextensive with those of the Class and that the proposed Class Representatives will continue to vigorously prosecute the action on the Class's behalf.  Arevalo "primarily invested in the Stable Value Fund," has met with Class Counsel and reviewed documents related to the case, and "will continue to take [her] responsibilities seriously" if appointed as a class representative.  (Arevalo Decl. ¶¶ 2, 5.)  Cornejo invested in the Stable Value Fund and AB Discovery Value Fund, has "been actively involved[,]" and "will continue to put the class members' interests ahead of [her] own."  (Cornejo Decl. ¶¶ 2, 5.)  Finally, Phuong T Mai invested in the Allspring Discovery SMID Cap Fund, has actively participated and remains willing to continue participating in the case, and "will place the interests of the Class above [her] own."  (Phuong T Mai Decl. ¶¶ 2, 5.)

However, the Court notes that the proposed Class Representatives seek service awards of $7,500, which appears over 100 times larger than the estimated average value of the payouts to the Plan per Class Member of $67.74 ($1,693,450 divided by 25,000).  (*See* Settlement Agreement ¶ 1.7; Mem. at 9.)  Courts recognize a potential conflict of interest between a named plaintiff and the class "when, as here, there is a large difference between the enhancement award and individual class member recovery."  *Mansfield v. Sw. Airlines Co.*, 2015 WL 13651284, at *7 (S.D. Cal. Apr. 21, 2015).  At the final approval stage, the Court will "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Nevertheless, at this preliminary stage, and in the absence of any apparent actual conflict, the Court concludes that Arevalo, Cornejo, and Phuong T Mai are adequate Class Representatives.

### b. Class Counsel

As to the adequacy of Class Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Class Counsel engaged in a thorough pre-suit investigation to identify and litigate the claims at issue, and further represent that they have collectively spent at least 500 hours litigating this matter. (Corrected Humphrey Decl. ¶¶ 29–30.) The parties conducted multiple rounds of discovery, exchanged and reviewed tens of thousands of documents, prepared expert reports, and participated in a one-day mediation. (Mem. at 22–23; Corrected Humphrey Decl. ¶¶ 31, 45.) Class Counsel also provide that they have extensive experience in handling employment class actions and sufficient knowledge of the applicable law. (Corrected Humphrey Decl. ¶¶ 3–6; Bradley Decl. ¶¶ 3–5, 9, Doc. 114-3.) Christina Humphrey has "litigated almost exclusively class and PAGA actions" and her "firm is litigating several class actions across the country involving violations of [ERISA]." (Corrected Humphrey Decl. ¶ 3.) Marcus Bradley is a partner at Bradley/Grombacher, LLP and has been co-counsel on dozens of class actions. (Bradley Decl. ¶ 4.) Based on this experience, the Court concludes that Christina Humphrey Law, P.C., and Bradley Grombacher, LLP satisfy the adequacy requirement.

### B. The Proposed Class Satisfies Rule 23(b)(1) Requirements

Plaintiffs seek certification under either 23(b)(1) or 23(b)(2). (Mem. at 22.) At the hearing on this motion, the Court inquired as to whether a mandatory class could be certified under Rule 23(b)(1)(B) given that the Settlement Agreement provides for only

monetary relief.  (*See* Transcript at 3:5–20; *see also* Settlement Agreement.)  Plaintiffs

provided supplemental briefing on the issue, detailing that the relief sought for breach of

fiduciary duty under ERISA is equitable in nature, and not individualized monetary

damages.  (*See* Supp. Brief re Class Cert. at 3–4, Doc. 119.)

"Classes certified under [Rule 23](b)(1) . . . share the most traditional justifications

for class treatment—that individual adjudications would be impossible or unworkable[.]"

*Dukes*, 564 U.S. at 361.  "'Most ERISA class action cases are certified under Rule

23(b)(1).'"  *In re Northrop Grumman*, 2011 WL 3505264, at *15 (quoting *Kanawi*, 254

F.R.D. at 111).  A class action may be maintained under Rule 23(b)(1)(B) if prosecution of

separate actions by individual class members would create a risk of: "adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would

substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P.

23(b)(1).  Rule 23(b)(1)(B) "is concerned only with the rights of unnamed class members,

not with the rights of [the defendants]."  *McDonnell-Douglas Corp. v. U.S. Dist. Court for

Central Distr. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975).  The rule covers cases in

which judgment in an individual action "inescapably will alter the substance of the rights

of others having similar claims."  *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467

(9th Cir. 1973).

A "classic" example of such a case is one charging "a breach of trust by an

indenture trustee or other fiduciary similarly affecting the members of a large class of

beneficiaries, requiring an accounting or similar procedure to restore the subject of the

trust."  *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833–34 (1999) (cleaned up).  In such a

case, "the shared character of rights claimed or relief awarded entails that any individual

adjudication by a class member disposes of, or substantially affects, the interests of absent

class members."  *Id.* at 834.  Monetary relief for claims brought for breach of fiduciary

duty under ERISA "go[es] to the plan as a whole, not to an individual plaintiff."  *Gomez v.*

*Rossi Concrete, Inc.,* 270 F.R.D. 579, 593 (S.D. Cal. 2010) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141–44 (1985)).

Here, Plaintiffs seek monetary relief for the Plan as a whole, based on a common theory that Defendants breached fiduciary duties to the Plan. (TAC ¶¶ 214, 221, 225). Given that Defendants' alleged breach is the same as to all Plan participants, the relief is conferred upon the Plan as a whole. *See Gomez*, 270 F.R.D at 593; *see also Mass. Mut.*, 473 U.S. at 142 ("A fair contextual reading [ERISA] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); *see also Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) (Staton, J.) (collecting cases certifying 23(b)(1) classes "where plaintiffs sought monetary relief for defined-contribution plans as a whole[.]"). Were Plaintiffs to bring their claims individually, any judgment on Defendants' liability would necessarily affect the determination of any claim for relief for this same conduct brought by other Plan participants in any concurrent or future actions. Considering the risk of inconsistent judgments, and the shared character of Plaintiffs' claims and relief sought, the Court concludes that certification is proper under Rule 23(b)(1)(B). *See Ortiz*, 527 U.S. at 834; *La Mar*, 489 F.2d at 467.

Notice of the action and opt-out are not required for Rule 23(b)(1) classes, though "a court in its discretion may provide for an opt-out or notice." *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994); *see also Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). The Court finds an opt-out procedure would be inappropriate here as it "would undermine the policies behind (b)(1) . . . certification." *Eubanks v. Billington*, 110 F.3d 87, 94–95 (D.C. Cir. 1997). However, as discussed below, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(2); *see also Martinez v. Hammer Corp.*,

2010 WL 11520538, at *1–*2 (C.D. Cal. July 30, 2010) (collecting cases discussing differences between notice requirements of Rule 23(c) and Rule 23(e)). As analyzed below, the Court considers the Settlement Agreement's provision of notice to Class Members appropriate in this case.

### III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT

To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing. Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). "The decision to [grant preliminary approval and] give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment.

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Rule 23(e)(2) provides that a "court may approve" a class action settlement proposal "after considering whether:"

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)[3]; and
(D) the proposal treats class members equitably relative to each other.

These factors were codified in the Federal Rules of Civil Procedure in 2018 in recognition of the fact that "[c]ourts have generated lists of factors to shed light on" the fairness, reasonableness, and adequacy of the proposed settlement. Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. Indeed, the Ninth Circuit's articulated list of factors has governed settlement approvals in the Circuit for over forty years. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Those factors overlap in many ways with the Rule 23(e)(2) factors, and include: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Here, the Court relies on the Rule 23(e)(2) factors but uses some of the developed guidance regarding the application of the Ninth Circuit's factors where relevant.

In addition to these factors, the Court must also satisfy itself that "settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up). It is most important to look for signs of collusion in "settlements struck before class certification" because "counsel may collude . . . to strike a quick settlement without devoting substantial resources to the case." *Briseno v. Henderson*, 998 F.3d 1014, 1023–24 (9th Cir. 2021). In

---

[3] Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

any class action settlement, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

### A. Adequate Representation

"Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class." *Hang v. Old Dominion Freight Line, Inc.*, 2024 WL 2191930, at *4 (C.D. Cal. May 14, 2024). Part of this analysis overlaps with the adequacy considerations discussed above when the Court conditionally certified the Class—whether there is a conflict of interest and whether representation has been competent and vigorous. *See Hanlon*, 150 F.3d at 1020. But the analysis also involves "'procedural' concerns" and requires "looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. Therefore, the Court must consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*

The need for an adequate information base is important: A plaintiff will not be able to broker a fair settlement without having been "armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). And for a court to be able to approve a settlement, "the parties must have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Id.* (cleaned up). A

court considering a proposed settlement has a duty "to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

As the Court already discussed above, the Class Representatives and Class Counsel have been adequately representing the Class. Further, the Court finds that this Settlement Agreement was reached after Class Counsel obtained adequate information. As mentioned, Class Counsel conducted a thorough pre-suit investigation of the relevant facts and applicable law, analyzed extensive discovery, engaged experts who are knowledgeable about ERISA and fiduciary obligations, and participated in a mediation before Todd Jackson of Feinberg Jackson Wortham & Wasow LLP. (*See* Mem. at 24–25; Corrected Humphrey Decl. ¶¶ 29–31; Bradley Decl. ¶ 9.) Given these facts, the Court concludes that the parties possess enough information to make an informed settlement decision. Accordingly, this factor weighs in favor of granting preliminary approval.

### B. Arm's Length Negotiation

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." As with the adequacy of representation, this is a "'procedural' concern[]" and "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. "The Ninth Circuit, as well as courts in this District, 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. Apr. 23, 2024) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Settlement was reached in this matter after extended, arms-length negotiations between the parties. (Mem. at 9, 24–25; Settlement Agreement at 3; Corrected Humphrey Decl. ¶¶ 23, 31.) The parties also engaged in a full-day mediation. (Corrected Humphrey Decl. ¶ 23.) This factor weighs in favor of granting preliminary approval.

22

### C. Adequacy of Relief

Having addressed possible procedural concerns, the Court next turns to a
"'substantive' review of the terms of the proposed settlement."  Fed. R. Civ. P. 23 advisory
committee's note to 2018 Amendment.  Rule 23(e)(2)(C) requires that "the relief provided
for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
including the method of processing class-member claims; (iii) the terms of any proposed
award of attorney's fees . . . ; and (iv) any agreement required to be identified under Rule
23(e)(3)."  The final factor is not relevant here, as the entirety of the agreement between
the parties is contained in the Settlement Agreement.  (*See* Settlement Agreement ¶ 1.43.)

Here, the Settlement Agreement provides for a settlement fund of $2,970,000 to be
distributed to the Plan after payments are made for attorneys' fees, costs, service awards,
taxes, and administration costs.  (*See* Settlement Agreement ¶ 1.26.)  As explained below,
the relief is adequate.

### 1.  Costs, Risks, and Delay of Trial and Appeal

Courts are instructed to "balance the risks of continued litigation, including the
strengths and weaknesses of plaintiff's case, against the benefits afforded to class
members, including the immediacy and certainty of recovery."  *Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).  To conduct this analysis, "courts may need to
forecast the likely range of possible classwide recoveries and the likelihood of success in
obtaining such results."  Fed. R. Civ. P. 23 advisory committee's note to 2018
Amendment.  Indeed, many district courts—including this Court—require that motions for
preliminary approval of class settlements include estimates of the defendant's maximum
potential liability.  *See, e.g.*, *Chen v. Western Digit. Corp.*, 2020 WL 13587954, at *3
(C.D. Cal. Apr. 3, 2020) (Staton, J.).

Here, the Court evaluates the value of the Settlement, measured against Plaintiffs'
estimated maximum trial recovery and the risk of continued litigation.  Plaintiffs note that
their estimated potential recovery at trial is $8,723,433.  (Corrected Humphrey Decl. ¶ 54.)

"[D]amages calculations offered to demonstrate the fairness of a proposed
settlement must be substantiated with detailed, reasoned analysis that explains how the
defendant's maximum potential exposure has been calculated."  *Grady v. RCM Techs.*,
Inc., 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (Staton, J.) (citations omitted).  At the
hearing on this matter, the Court requested a copy of the expert report and/a declaration
from Plaintiffs' experts explaining the methodology and calculations used to arrive at the
potential damages figures listed in the motion.  (Transcript at 7:3–8:7.)  In response,
Plaintiffs provided a supplemental declaration from Class Counsel, which details how the
experts calculated Plaintiffs' potential damages with respect to the allegations at issue.
(*See* First Supp. Decl. ¶¶ 5–11.)  Specifically, the declaration provides that the figure was
calculated by expert consultants who (1) identified "annual amounts collected from
participants that exceeded the reasonable cost of recordkeeping services"; (2) compared
the actual fee charged for the Stable Value Fund to a reasonable benchmark fee; and (3)
compared the actual returns on the three "underperforming" funds "against the returns of
their respective Morningstar Category Index benchmarks."  (*Id.* ¶¶ 6–10.)  Upon review of
the declaration, the Court is satisfied that Plaintiffs' estimated potential recovery at trial is
based upon "detailed, reasoned" analysis.  *See Grady*, 671 F. Supp. 3d at 1075.

The proposed settlement fund represents approximately 34% of Defendants'
maximum potential liability.  (Corrected Humphrey Decl. ¶¶ 54, 58.)  This percentage
compares favorably to prior approved settlements in ERISA class actions.  *See In re Mego
Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding fair and adequate an
ERISA settlement representing one-sixth, or 16 percent, of recovery); *Reyes v. Bakery &
Confectionery Union & Indus. Int'l Pension Fund*, 2017 WL 6623031, at *6 (N.D. Cal.
Dec. 28, 2017) (approving ERISA settlement recovery of 25%).  Furthermore, the

24

Settlement Agreement provides for review of the Settlement by an independent fiduciary who "will serve as an independent fiduciary *to the Plan* to approve and authorize the settlement of Released Claims on behalf of the Plan thirty-five days prior to the Final Fairness hearing."  (Mem. at 9; *see also* Settlement Agreement ¶ 2.1.)

The risks of litigation for both parties and the costs of proceeding to trial also support a finding that the Settlement is reasonable.  Plaintiffs argue that continued litigation would become time consuming and uncertain, involving complex motions and further fact and eventual expert discovery, and continued motion practice.  (Mem. at 24–25.)  The parties also anticipate that the non-prevailing side would extend the already-lengthy litigation process through appeals.  (*Id.*)  Furthermore, discovery revealed "that Plaintiffs faced substantial risks on the merits" as theories similar to Plaintiffs' excessive recordkeeping and investment-in-underperforming-funds theories of liability "have recently been defensed at trial."  (Mem. at 26.)  There is also "substantial risk that" Plaintiffs' theory as to the retention of the Voya Stable Fund "could be lost at trial[.]"  (*Id.* at 26–27.)  Given the risks of continued litigation, early resolution provides a benefit to the Class that might outweigh any potential trial recovery.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

For the above reasons, the Court finds that this factor weighs in favor of granting preliminary approval.  However, prior to evaluating the adequacy of the Settlement at final approval, the Court will require the parties to submit, no later than **ten (10) days** before the Final Fairness Hearing, notification to the Court as to the independent fiduciary's determination on whether to approve and authorize the settlement on behalf of the Plan.

### 2. Effectiveness of Proposed Distribution Method and Claims Processing

Next, the adequacy of the relief depends on "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Initially, the Plan of Allocation proposed allocating each Class Member a share of the settlement fund in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. (*See* First Plan of Allocation ¶ II.B, Doc. 114-2.) At the hearing on this motion, the Court queried whether the Settlement could be allocated and distributed according to Class Members' respective investments in particular funds. (Transcript at 12:5–12.) Plaintiffs then contacted Voya, which confirmed that it could generate the fund-level data necessary to allocate and distribute the Settlement in accordance with Plan participants' investment history. (*See* First Supp. Decl. ¶ 3; Second Supp. Decl. ¶¶ 2–4.)

Based on this confirmation, and as discussed above, the revised the Plan of Allocation provides that 60% of the Settlement "will be distributed to all participants to address the recordkeeping-related claims; 30% will be allocated to participants who invested in the Allspring Discovery SMID Cap Growth, AB Discovery Value, and/or AB Global Bond funds; and 10% will be allocated to participants who invested in the Voya Stable Value Fund." (Second Supp. Decl. ¶ 5; *see also* Plan of Allocation ¶ II.B.) As a class certified under Rule 23(b)(1) is mandatory, Class Members will not be able to opt-out of the Settlement Agreement. *See Molski*, 318 F.3d at 947. For Class Members with active accounts in the Plan, their respective settlement amount "will be contributed to the Plan and allocated into their Plan account[.]" (Plan of Allocation ¶ II.D.) The settlement amount for Class Members without active accounts in the Plan will be "paid directly by the Settlement Administrator by check." (*Id.* ¶ II.E.)

Any checks undelivered or not cashed before their expiration date (180 days after issuance), as well as any monies remaining in the settlement fund 395 days after entry of

Final Approval of the Settlement, will be paid to the designated *cy pres* recipient, Pension
Rights Center.  (*Id.* II.H–I; *see also* Settlement Agreement ¶¶ 5.6–7.)  The use of a *cy pres*
beneficiary "'to distribute unclaimed or non-distributable portions of a class action
settlement fund'" is appropriate only when the "fund is 'non-distributable' [because] 'the
proof of individual claims would be burdensome or distribution of damages costly.'"  *Lane
v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663
F.3d 1034, 1036, 1038 (9th Cir. 2011)).  At the hearing, the Court questioned whether the
Settlement Agreement provided for a further round of distribution to participants prior to
distribution of unclaimed portions of the settlement fund to the *cy pres* recipient.
(Transcript 20:20–21:13.)  The parties stated that no second distribution is provided for in
the Settlement Agreement, but that the Settlement Administrator will do an initial
verification of addresses prior to sending out class notice and will conduct a second
verification in the event that a check is returned as undeliverable.  (Transcript 23:1–6.)
The parties also represented that the majority of Class Members are active participants in
the Plan.  (*Id.* 22:5–12.)

Upon considering the parties' testimony, and the terms of the Settlement
Agreement, the Court finds the Settlement Agreement's distribution methodology to be
reasonable, and to provide adequate relief to Class Members.  However, and as the Court
will address more fully at final approval, the Court will require submission of a post-
distribution status report *prior* to any distribution of funds remaining in the settlement fund
to the *cy pres* recipient.  Furthermore, at final approval, the parties should submit a
declaration from the Settlement Administrator attesting that it will conduct a second
verification of addresses for any checks returned as undeliverable.

### 3.  Proposed Attorneys' Fees

The "terms of any proposed award of attorney's fees" also affects the adequacy of
the relief.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Ninth Circuit explained that, when
considering this factor, "district courts must apply the *Bluetooth* factors to scrutinize fee

arrangements," meaning the Court should look for a disproportionate distribution of attorneys' fees, clear sailing provisions, and "reverter" or "kicker" clauses that return undistributed funds to the defendant. *Briseno*, 998 F.3d at 1026–27. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*, 654 F.3d at 942.

Here, Plaintiffs will move for an award of attorneys' fees no later than forty-five days before the date of the final fairness hearing. (Settlement Agreement ¶ 6.2.) They will move for an award not to exceed $990,000 (33.3%) of the Gross Settlement amount; Defendants "will take no position with respect to . . . Attorney's Fees and Expenses . . . so long as consistent with the terms of the Settlement Agreement." (*Id.* ¶¶ 6.1, 6.4; *see also* Mem. at 9.)

Beginning with the markers of collusion identified in *In re Bluetooth*, the Court notes that while the Settlement Agreement contains no reverter clause, (*see* Settlement Agreement ¶ 5.7), it provides for attorneys' fees above the 25% benchmark in the Ninth Circuit, *see In re Bluetooth*, 654 F.3d at 942, and contains an agreement that Defendants will take no position with respect to attorneys' fees. (*See* Settlement Agreement ¶ 6.4.) While, at this time, the Court concludes that there are not sufficient indicia of collusion to warrant denial at the preliminary approval stage, it reserves its full consideration of this factor until final approval. In the motion for fees, costs, and service payments, Class Counsel should be prepared to make a sufficient showing to justify any upward departure from the Ninth Circuit's fees benchmark. As required by this Court's Procedures, Plaintiffs should also submit detailed billing records in Microsoft Excel format, so that the Court may conduct a proper lodestar crosscheck of any requested fee. (*See* Procedures Page § 26 (incorporated by Standing Order at 2, Doc. 9).)

### D. Equitable Treatment of Class Members Relative to Each Other

The last factor to consider under Rule 23(e)(2) is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of

concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment.

As discussed above, at the hearing on this motion, the Court noted that the settlement's initial allocation scheme did not distinguish between participants' account balances in particular funds, e.g. between a Plan participant exclusively invested in the Stable Value Fund as opposed to a blend of funds. The Court accordingly requested supplemental briefing from the parties as to whether the proposed Settlement Agreement could be allocated based on participants' actual investment in the challenged funds. The parties' revised Plan of Allocation now provides for allocation of the settlement in accordance with participants' fund-level investment history and in proportion to the relative valuation of the settlement claims in this case. (*See generally* Amended Plan of Allocation.) Considering this allocation method, the Court finds that the Settlement treats Class Members equitably.

Finally, the Court considers the proposed service awards and whether the awards result in an inequitable distribution to the Class Representatives. As discussed above in the context of conditional certification of the Class, it appears the proposed service awards may be excessive. However, because the Court will determine an appropriate service award at final approval, the Court does not find the relative value of the service award compared to the relief afforded per Class Member to weigh against preliminary approval of the Settlement. At final approval, Plaintiffs should be prepared to show that the requested service awards are equitable and reasonable based upon the Class Representatives' work done on behalf of the Class.

### E.  Conclusion as to Preliminary Approval

Considering the factors established by Rule 23(e), the Court preliminarily concludes that the Settlement Agreement is fair, reasonable, and adequate, and appears to be the

product of serious, informed, non-collusive negotiations.  Accordingly, the Court
preliminarily approves the proposed Settlement.  The Court also finds the Plan of
Allocation to be reasonable.  *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293,
at *5 (C.D. Cal. May 6, 2014) ("Approval of a plan of allocation of settlement proceeds in
a class action under Rule 23 is governed by the same standards of review applicable to
approval of the settlement as a whole: the plan must be fair, reasonable, and adequate.")
(citations omitted).

### IV.  SETTLEMENT ADMINISTRATOR

The parties propose to appoint ILYM Group to serve as Settlement Administrator.
(*See* Settlement Agreement ¶ 1.42; Corrected Humphrey Decl. ¶ 50; *see generally* Mullins
Decl.)  Plaintiffs submitted a declaration from Lisa Mullins of ILYM Group representing
that "ILYM Group has extensive experience in disseminating class action notices and
administering class action settlements[.]"  (Mullins Decl. ¶ 2.)  ILYM Group's fees
associated with administration of the settlement are estimated at $97,550 but may be
subject to adjustment based on the final Class Member List.  (*Id.* ¶ 10; *see also* Settlement
Agreement ¶ 1.2.)  All the costs incurred by ILYM Group in administering the Settlement
will be deducted from the Gross Settlement Amount.  (Corrected Humphrey Decl. ¶ 50;
Settlement Agreement ¶ 1.2).  Plaintiffs "received three quotes from settlement
administrators and selected the most competitive (and lowest) one."  (Corrected Humphrey
Decl. ¶ 50.)  The Court approves ILYM Group as the Settlement Administrator.

### V.  CLASS NOTICE FORM AND METHOD

For proposed settlements, Rule 23(e)(1) requires the Court to "direct notice in a
reasonable manner to all class members who would be bound by the proposal if giving
notice is justified by the parties' showing that the court will likely be able to (i) approve
the [settlement]; and (ii) certify the class for purposes of judgment on the proposal."  Due
process requires "notice reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The parties have provided for notice to Class Members in this case via U.S. mail and publication to the settlement website. (Settlement Agreement ¶¶ 2.9, 13.2; Mullins Decl. ¶¶ 5–6.) As a class certified under Rule 23(b)(1) is mandatory, Class Members cannot opt-opt of the class, *Molski*, 318 F.3d at 947, but will have until twenty-eight days prior to the final fairness hearing to object to the Settlement. (Settlement Agreement ¶ 2.6.7.) The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702 at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*). The Court finds that the proposed procedure for class notice satisfies these standards.

Plaintiffs provided the Court with a copy of the proposed notice. (Ex. A to Settlement Agreement, Class Notice, Doc. 114-2.) At the hearing on this matter, the Court identified certain changes it required made to the proposed notice. (Transcript at 18:13– 19:24.) Specifically, the Court required the notice to state that (1) all papers filed in this action will be available for review via the Public Access to Court Electronic Resources System (PACER); (2) the motion for attorneys' fees and costs will be filed before the deadline to object; and (3) an e-signature is acceptable for all objections. (*Id.*) The Court further required that it be removed as the designated recipient of objections to the settlement. (*Id.* at 18:25–19–6.)

Plaintiffs submitted an amended proposed notice conforming with the Court's instructions with one exception: the amended notice does not provide that an e-signature is acceptable for all objections. (*See* Amended Notice at 15, Doc. 122 at 9.) Rather, it provides that objections "must be postmarked[.]" (*Id.*) Plaintiffs do not explain why mailed objections are required when the Settlement Administrator will maintain a website

regarding the Settlement.  Therefore, the Court requires Plaintiffs to provide, within **five (5) days** of the date of this Order, an amended notice providing Class Members an electronic option for submitting objections to the Settlement.  The Settlement Administrator and/or Counsel will be responsible for filing with the Court, **no later than 10 days *after* the expiration of the objection deadline**, the objections that were submitted, if any, along with a brief responding to any submitted objections and otherwise summarizing the Class Members' participation in the Settlement and the Settlement administration.

As to the form of notice, the Court finds that it adequately apprises Class Members of the action.  *See Mullane*, 339 U.S. at 314.  Further, though a class certified under Rule 23(b)(1) need not include the information required by Rule 23(c)(2)(B), the proposed notice contains all the relevant information that Rule 23(c)(2)(B) requires.  That is, the proposed notice includes information as to: "[1] the nature of the action; [2] the definition of the class certified; [3] the class claims, issues, or defenses; [4] that a class member may enter an appearance through an attorney if the member so desires; . . . and [5] the binding effect of a class judgment[.]."  Fed. R. Civ. P. 23(c)(2)(B).

Subject to the change discussed above, the Court approves the form and method of class notice.

## VI.  CONCLUSION

For the foregoing reasons, the Court CONDITIONALLY GRANTS Plaintiffs' Motion for Preliminary Approval of a Class Action Settlement.  Within **five (5) days** of the issuance of this Order, the parties shall submit an amended notice making clear that objections may be submitted via the Settlement website and that an e-signature is acceptable for all objections submitted.  With this filing, the parties should also submit a proposed schedule of deadlines for class notice, Class Member objections, and other events that will occur after preliminary approval and prior to the Final Fairness Hearing.  These deadlines should be written in a format that allows adoption by the Court, e.g. "Deadline to

file results of independent fiduciary's review of the Settlement with the Court: +10 days before Hearing."

DATED:  August 18, 2025

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE